[The Chancellor then passed an order dissolving the injunction, and discharging the receiver.]

———

WALLIS, for Complainants.
DULANY, for Defendants.

———

MARY RINGGOLD
vs.                    } SEPTEMBER TERM, 1850.
VALENTINE BRYAN ET AL.

———

[VENDOR'S LIEN—CHANCERY PRACTICE—EVIDENCE—NOTICE.]

———

A VENDEE who has sold the land, is a competent witness for his vendor in a proceeding by the latter against the purchaser to enforce the vendor's lien, to show that the purchaser had notice of such lien.

Whatever is sufficient to put a party upon inquiry, is good notice in equity.

The fact that complainant was in possession of part of the premises purchased, is sufficient to put the purchaser upon inquiry; and if he neglects to inform himself of the nature of complainant's rights, he must take the consequences of his neglect.

The averment that his vendor was at the time of the execution of the conveyance, seized or pretended to be seized, and was in possession of the premises conveyed, is indispensably necessary to a plea by a defendant that he is a *bona fide* purchaser *without notice.*

The complainant, who was the original vendor of the land, was in possession of part of it, when it was purchased from her vendee. HELD—That this was sufficient to put the purchaser upon inquiry as to all the terms and conditions of the contract between the complainant and her vendor, and he must be considered as affected with notice of them all.

The purchase-money attaches to the land in the hands of the vendee as a trust; and the heirs of the vendee, and all other parties claiming under him or them, with notice, are treated as in the same predicament.

Where the vendee has sold the land to a *bona fide* purchaser without notice, if the latter has not paid the purchase-money, the original vendor may proceed against the estate, or the purchase-money in his hands; for in

such a case, not having paid the purchase-money, he takes the land *cum onere.*

A judgment against the vendee gives to the judgment-creditor no estate in the land, but simply a lien upon it for the payment of his debt; and such lien being a general one, cannot affect or impair in any way the equitable lien of the vendor.

———

[The complainant, Mary Ringgold, and her husband William Ringgold, sold to the defendant William A. G. Hobbs, a tract of land and premises under the following contract, signed and sealed by the purchaser, and referred to in this cause as Exhibit B.

"I have purchased of William Ringgold and Mary Ringgold, his wife, the farm called Sportsmen's Hall, which was devised to the said Mary by her father, John Blake; and am to pay $8 an acre for said land, after deducting such parts thereof as have been heretofore sold. The whole purchase-money is to be paid by me equally among the children of the said Mary Ringgold, immediately after her decease, and upon their arrival at legal age : and in the case of the death of either, or any of said children without legal issue, then the portion of such deceased child to be equally divided among the survivors; and I am to reserve to myself a child's part of such purchase-money in right of my wife. The said purchase-money is not to bear interest during the life of the said Mary Ringgold; but I am to apply annually, during her life, a sum equivalent to such interest to such purposes as I may think most useful to her and her family. I am also to reserve for her use during her life the dwelling-house, kitchen, meat-house, poultry-house, and garden on said farm, with the privilege of getting firewood, of pasturing four head of cattle, and of raising any kind of poultry except turkeys. And if the said William Ringgold should survive his said wife, then I am to retain in my hands $1,000 of said purchase-money during his life, the interest of which is to be applied by me in such manner as I may think most to his advantage, the said sum to be distributed, as above-mentioned, after his death. And if I should refuse or neglect to secure to the said Mary Ringgold the an-

nual sum and the privileges above-mentioned, and the said William Ringgold the interest above-mentioned after the death of his wife, it is understood, and I hereby agree to pay to the children of the said Mary Ringgold at the times specified for their receiving the principal of the purchase-money, interest on the same from the 1st day of January last, and to forfeit such portion of said purchase-money as I should be entitled to in right of my wife. Witness my hand and seal this 2d day of February, in the year 1832."

On the same day the said William and Mary executed a deed marked Exhibit A, conveying the said land to the said Hobbs absolutely, in consideration, as expressed on the face of the deed, of $3,000 to them in hand paid by the grantee. Hobbs subsequently, on the 16th of December, 1837, mortgaged this land to the defendant, Valentine Bryan, to secure the latter as his security upon a note for $1,607, and an additional indebtedness of $653 48, due from the mortgagor to said Bryan. Afterwards, on the 14th of September, 1844, the said Bryan became the purchaser of this land at a sheriff's sale under a *fieri facias*, upon a judgment recovered against said Hobbs in Queen Anne's County Court, in favor of one H. C. Keys, and others.

After the death of the said William Ringgold, to wit, on the 30th of June, 1845, the complainant, his said wife, filed her bill in this case, in which, after stating the above facts, she charges that Hobbs has neglected and refused to pay the annual sum to her mentioned in said agreement, and that the same remains in arrear and unpaid for two years, amounting to the sum of $406 08, that he has become embarrassed, and has no means of paying the same, except by a sale of said land. That Bryan had full knowledge and notice of her claim and that of her children before the date of his mortgage, and at the time she and her husband executed the deed above-mentioned, he (Bryan) well knew the terms and conditions upon which it was made, he having in fact fixed the value of the land, and the sum of money which Hobbs was to pay for the same, and well knew how and to whom the purchase-money

was to be paid. The bill then prays for a decree to sell the land to pay complainant's claim, and for general relief.

The answer of Bryan admits the execution of Exhibit A, the mortgage of the property by Hobbs to him, and his purchase at sheriff's sale, as charged in the bill, but avers that he did not know at or about the time of the execution of Exhibit A, nor at any other time, until a short time before the sheriff's sale, of the existence or pretence of the claim thereto by complainant, of the covenant or agreement set forth in Exhibit B. That he believes Exhibit B was set up by complainant a short time before the sheriff's sale, and then claimed to have been executed at or about the time of the execution of Exhibit A. That he did not know and never heard, at or about the time of the execution of Exhibit A, that Hobbs was to pay an annual sum equal to the interest on the purchase-money, and the principal thereof to complainant's children after her death, nor did he know, nor was he afterwards ever informed, until a few months before the sheriff's sale, that the purchase-money had not been paid by Hobbs, according to the acknowledgment in Exhibit A. He admits that some months before the sale, complainant did allege that the purchase-money had not been paid by Hobbs, and some time after this conversation with complainant, he learned for the first time that she claimed any other consideration than that mentioned in Exhibit A. He admits that he heard, some short time after the execution of Exhibit A, rumors or reports of a consideration different from that therein expressed, but the consideration so reported to defendant was totally different from that contained in Exhibit B, and when this report reached him he inquired of a person who was present at the execution of the deed, if such a consideration as that reported was the true one, and was answered in the negative, and made no further inquiry on the subject. That on the faith and credit of his title to said land he had made large advances to Hobbs, and become security for him for large sums, and he charges that the suppression of said contract, if it were made, was in fraud of his creditors, and particularly of defendant. That the claim of such a covenant as

that contained in Exhibit B, was first made known to him only a short time before the sheriff's sale, which was long after he had made large advances, and incurred heavy responsibilities for said Hobbs.   That notwithstanding his total ignorance of any such agreement as that set up in Exhibit B, up to the time stated above, yet regarding the land to be worth more money than the aggregate of all the liens created by Hobbs which bind it, he has been always willing and ready to secure complainant, since his said purchase, an annuity for life equal to the interest upon the price of the whole land at eight dollars per acre, and the principal to her children after her death, except the part that would belong to Hobbs, provided he has made to him a good, quiet, and sufficient title to the land, and before the filing of this bill, he made this offer to a friend of the complainant, who in her behalf applied to him to settle this claim.   That notwithstanding complainant is seeking the relief prayed in her bill, she has been holding possession of a part of the premises, and deforcing him of the possession thereof.   That he had no knowledge of any arrearages for annuity or rent due by Hobbs to complainant at the time of the sheriff's sale, and at that time no notice whatever was given thereof.

The purport of the proof taken in the case sufficiently appears from the opinion of the Chancellor.]

THE CHANCELLOR:

Upon carefully reading and considering the pleadings and proofs in this case, I am of opinion that the equitable lien of the vendor, for the unpaid purchase-money, attaches to the land sold and conveyed by the complainant to William A. G. Hobbs, on the 2d of February, 1832, and subsequently mortgaged by Hobbs to the defendant, Valentine Bryan.   The answer of this defendant admits that prior to the sale to him by the sheriff, in September, 1844, he was informed by the complainant that the purchase-money remained unpaid, and that afterward, and as it appears also, prior to his purchase from the sheriff, he learned that the complainant claimed that she was entitled to other considerations besides the money consideration to be paid her by Hobbs.

The answer, however, denies, though not in very precise and explicit terms, that the defendant knew that the purchase-money had not been paid by Hobbs at the date of the mortgage by the latter to him. But this denial, assuming it to be positive, is, I think, overcome by the evidence, which shows very clearly that Mr. Bryan did know of such non-payment, and was fully aware that his mortgages were subordinate to the claim of the vendor for the purchase-money. The depositions of Grason and Hobbs are conclusive upon this point, and though the competency of the latter has been excepted to upon the ground of interest, I do not see upon what principle his deposition can be excluded. The ground of the objection is that the tendency of his testimony is to make the defendant, Bryan, primarily responsible to the complainant and himself only in a secondary degree. But the object of this proceeding is not to make Bryan personally responsible at all, and as against him personally the complainant can have no decree. The object of the bill is to charge the land with the lien of the vendor, and though this might relieve the witness from the claim of the complainant for the purchase-money, it would leave him exposed to the prosecution of Bryan for the moneys due him, to secure the payment of which the land was mortgaged.

But, conceding the objection to the competency of the witness is well taken, there is surely enough left to subject the defendant Bryan to the consequences of notice. That there were awakening circumstances in the case, sufficient to put him upon an inquiry, is undeniable, and as remarked by the Court of Appeals in *Magruder* vs. *Peter*, 11 *G. & J.*, 243, "whatever is sufficient to put a party upon inquiry, is good notice in equity." In this case, a possession of a part of the premises was in the complainant, and that was a circumstance to put the purchaser upon the inquiry, and if he neglected to inform himself of the nature of her rights, he must take the consequences of his neglect. *Baynard* vs. *Norris et al.*, 5 *Gill*, 468, which authority also proves that the answer in this case omits an averment, indispensably necessary to the validity of

a plea, that the defendant is a *bona fide* purchaser without notice, to wit, "that the grantor was, at the time of the execution of the mortgage by him to the defendant, seized, or pretended to be seized, and was possessed of the premises conveyed."

But, so far as regards the purchase-money of this property, it cannot be material to determine whether, but for the defendant's offer, it would not be liable, since the answer itself contains an expression of the defendant's willingness to pay it, in precise accordance with the terms of the contract, as set out in the complainant's Exhibit B. The language of this part of the answer, is, "that notwithstanding his total ignorance of any such agreement between the said Hobbs and the complainant, up to the time stated above, yet that the defendant, regarding the said land to be worth more money than the aggregate of all the liens created by said Hobbs, which bind the said land, has been always willing and ready to secure to the complainant (since his said purchase) an annuity for life, equal to the interest upon the price of the whole land, at the rate of eight dollars per acre, and the principal to her children after her death, except the part which would belong to the said Hobbs, provided he has made to him, the said defendant, a good, quiet, and sufficient title to the said land and premises."

The real controversy, therefore, in this case is not with regard to the purchase-money, but has respect to certain privileges which, by the contract between the complainant and Hobbs, executed on the same day with her deed to him, were secured to her during her life. These privileges consisted of her right to the use of the dwelling-house, &c., on the land, and certain other rights in said contract expressed.

Now the circumstance which has been mentioned as sufficient to put the defendant on the inquiry, with regard to the payment of the purchase-money, made it equally obligatory upon him to inquire into all the terms and conditions of the contract, and he must be considered as affected with notice of them all. Nay, the answer itself shows conclusively that rumors were in circulation, and had reached the ears of the

defendant, that the moneyed consideration mentioned in the deed from the complainant to Hobbs was not the only one, and no sufficient reason has been assigned for the defendant's omission to make inquiry in a quarter from whence correct information could have been obtained. I should, therefore, strongly incline to think that all the consequences of notice of these additional considerations would attach to the defendant, even if the proof of actual notice was less direct and positive. But when the evidence of Grason and Hobbs is examined, by which it is shown that the defendant personally knew all the terms of the contract between the latter and the complainant, it is, as it seems to me, impossible that the defendant can free himself, or the property purchased by him, from all the consequences resulting from such knowledge.

The defence relied upon in the argument, founded upon the purchase by the defendant from the sheriff under Key's judgment, cannot be allowed to prevail. At that time, and for some short time before, according to the distinct admission of the answer, the defendant knew of these additional considerations, and therefore he cannot complain that he bought the property in ignorance of their existence, nor does he do so, the defence set up by him being that the suppression of them was a fraud upon the creditors of Hobbs, and particularly upon the defendant, who was acting as his friend, and becoming involved for him for large amounts, and making him considerable advances in money.

The imputation that fraud in fact was perpetrated or contemplated by the complainant, in not expressing the full terms of her contract with Hobbs upon the face of her deed to him, is fully repelled by the evidence of Grason, who shows why these terms were omitted, and that it certainly was not with any design to defraud any one. In the hands of Hobbs, the purchaser from the complainant, the land was unquestionably bound for the purchase-money, notwithstanding the execution of her deed to him. The purchase-money attached to the property in the hands of the vendee as a trust, and the heirs of the vendee and all other persons claiming under him or them

with notice, are treated as in the same predicament. 2 *Story's Eq.*, sec. 1217, 1218, 1219. And where the vendee has sold the estate to a *bona fide* purchaser without notice, if the purchase-money has not been paid, the original vendor may proceed against the estate for his lien, or against the purchase-money, in the hands of such purchaser, for satisfaction; for in such a case the latter, not having paid the purchase-money, takes the land *cum onere*. 2 *Story's Eq.*, sec. 1232.

The judgment in favor of Key gave him no estate in the land, but simply a lien on it for the payment of the debt, and such lien, being a general one, could not affect or impair in any way the equitable lien of the vendor for the unpaid purchase-money. *Hampson* vs. *Edelen*, 2 *H. & J.*, 64; *Repp et al.* vs. *Repp et al.*, 12 *G. & J.*, 341. I do not, therefore, think that the defendant, Valentine Bryan, can protect himself under his purchase at the sheriff's sale upon the execution of Key's judgment.

But although I am of opinion that the complainant is entitled to relief, the case is not now in a condition for a final decree. The bill claims that the annuity stipulated to be paid by Hobbs is in arrear and unpaid, but there is nothing in the record to show how much is in arrear, nor is there any satisfactory evidence of the value of the privileges mentioned in the contract. These privileges are not claimed by the bill in the specific prayer for relief, but the contract by which they were secured to the complainant, is filed as an exhibit, and proved by the evidence, and there being no exception to the sufficiency of the averments of the bill, I am of opinion that under the general prayer, relief may be afforded in respect of them.

I shall, therefore, send the case to the Auditor, with directions to take an account of the amount due for the purchase-money and the annuity, being the interest thereon, and also the value of the privileges specified in the agreement, to the end that such a decree may be hereafter passed, as the justice of the case requires.

————

McLEAN and OTHO SCOTT, for Complainants.
WM. A. SPENCER, for Respondents.