LEWIS W. THOMPSON ET AL.
v.
ELEANOR C. SCOTT ET AL.

1. INSTRUMENT IN THE NATURE OF A MORTGAGE—AGREEMENT BY MARRIED WOMAN.—Appellant's intestate, in his lifetime, conveyed to appellee S., a married woman, certain land, and took from her an instrument in the nature of a mortgage to secure the deferred payments, her husband not joining in such mortgage. Appellee S. afterwards conveyed the premises to C., subject to the lien of the vendor aforesaid, who in turn conveyed the premises to P. and W., with notice of the lien, and who purchased subject thereto. *Held*, that although a deed or mortgage executed by a married woman without her husband joining is void as a conveyance of real estate as to her, though of her separate estate, that was not the question in this case; but whether a married woman can make any kind of a contract in writing by which, in equity, she can create a lien upon her real estate to secure her indebtedness for an unpaid portion of the purchase money.

2. SUCH AGREEMENT GOOD IN EQUITY.—Although such an agreement would not operate as a mortgage by reason of the disability of coverture, it is valid in equity to create a lien or security for the debt.

3. LACHES.—It was insisted that appellants were guilty of such laches as should prevent them from having relief under a claim of a vendor's lien; but appellees having expressly agreed to pay the unpaid purchase money, and having deducted that amount from the price they agreed to pay, it does not become them to complain of laches which they could so easily have prevented by paying an honest debt.

4. VENDOR'S LIEN.—Appellees having actual notice of the unpaid

41

purchase money, and having assumed to pay it, whether the mortgage is a good contract in equity, or an absolute nullity, there is a vendor's lien here for an amount which they have agreed to pay, and equity and good conscience require that they should do so.

APPEAL from the Circuit Court of Mercer county.

Mr. H. BIGELOW, for appellants; that the instrument created a lien upon the premises that would be enforced in equity, cited, Carpenter v. Mitchell, 54 Ill. 126; Markoe et al. v. Andras, 67 Ill. 34.

That the subsequent grantors having taken the land subject to the mortgage, they cannot now be permitted to gainsay it: Hatch v. Morris et al. 3 Ed. Ch. R. 314.

While the attempted mortgage did not as such *create* a lien, it nevertheless *preserved* one: Morrison v. Brown, 83 Ill. 562.

The grantee, though a married woman, had the power while she owned the property, to charge it with her debts, provided she executed an instrument in writing manifesting an intention so to do: Williams v. Hugunin, 69 Ill. 214; Yale v. Derderer, 22 N. Y. 450.

Messrs. PEPPER & WILSON, for appellees; contending that the mortgage or conveyance was void, cited Morrow v. Brock, 12 Ill. 273; Hughes v. Lane, 11 Ill. 128; Lane v. Lowland, 15 Ill. 123; Garrett v. Moss, 22 Ill. 363; Gove v. Catlin, 23 Ill. 634; Russell v. Ramsey, 35 Ill. 370; Lindley v. Smith, 46 Ill. 524; Board of Trustees v. Davison et al. 65 Ill. 125.

That a mortgage not executed in the manner prescribed by statute is void: Moulton v. Hurd, 20 Ill. 137; Cole v. Van Riper, 44 Ill. 58; Bressler v. Kent, 61 Ill. 426; Lewis v. Graves and Elder v. Jones, Sup. Ct. Ill. 1877.

LELAND, J.   The Court below sustained a demurrer to an amended bill in chancery, filed by appellants in Mercer county. The bill as amended was in substance as follows, viz:

On the 4th day of Dec., A. D. 1861, James S. Thompson, then in his lifetime, but since deceased, was the owner and

seized in fee of certain lands situated in the county of Mercer, described in the bill.

On that date he agreed to sell said land to the defendant, Eleanor C. Scott, then and since the wife of the defendant, James H. Scott, for the sum of $500, and the said Eleanor C. Scott agreed to purchase said land on the following terms, to wit: $150 cash, $120 two years, $115 three years, and $115 four years after that date, with interest on the deferred payments at the rate of ten per cent., payable annually.

That Thompson was to convey and did convey the land to said Eleanor Scott, by deed of warranty, and which was duly recorded, etc., and it was then agreed that he should have and retain an express lien thereon to secure the unpaid purchase money.

That as a part and parcel of the agreement, the said Eleanor C. Scott executed and delivered to said Thompson her three promissory notes for said deferred payments, due two, three, and four years after date.

That as a further part of said agreement, the said Eleanor C. Scott, in order to more fully evidence the fact that the said Thompson was to have and retain an express lien on said land to secure said unpaid purchase money, executed, acknowledged and delivered her certain instrument in writing, under seal, in the form of a mortgage; that the mortgage was duly recorded, etc.

That the execution of the deed from Thompson, and the execution of the notes and the instrument in the form of a mortgage to secure them, by the said Eleanor C. Scott, was all, in fact, one transaction; that the said Thompson intended to retain, and the said Scott agreed that he should have an express lien on the lands to secure said unpaid purchase money. That but for said agreement the said Thompson never would have conveyed said land; and that all of the defendants well knew all of these facts before they obtained any interest in the property.

That Thompson departed this life intestate about the 23d day of July, A. D. 1868, leaving him surviving Nancy S. Thompson, his widow, and Josie T., Vic., Grace, Emily and Stella, his children and sole heirs at law.

That on the 22d day of August, A. D. 1868, Lewis W. Thompson and Nancy S. Thompson were appointed his administrators. That the administrators have long since from the personal effects of the deceased paid all of his debts; and that the moneys due from the defendants, or any of them, belong to the widow and heirs of the deceased.

That upon the execution and delivery of the deed from Thompson to Scott, the said Eleanor C. Scott entered into possession of the premises conveyed, and continued to occupy them until the 26th day of January, A. D. 1871, when she sold and agreed to convey them to appellee Cochrane, and attempted to make a deed therefor; but a mistake having been made in the description of the land, she afterwards, and on the 15th day of February, A. D. 1871, executed to Cochrane another deed properly describing the premises.

That at the time the said Eleanor C. Scott sold and conveyed the land to Cochrane, she informed Cochrane of the existence of Thompson's claim, and that as a part of the purchase price by Cochrane from Mrs. Scott, Cochrane agreed to pay the money due Thompson, which was secured by said attempted mortgage lien. That the words "subject to all incumbrances," which were written in the deed from Mrs. Scott to Cochrane, referred to and embraced the Thompson lien on the land.

That Cochrane accepted the deed and possession of the land subject to the lien due Thompson from Mrs. Scott. That the negotiation between Cochrane and Mrs. Scott was conducted on the part of Cochrane by Sam. H. Ward, husband of appellee, Lucy D. Ward, and Jeremiah Pulver, husband of appellee, Clarissa Pulver. That Cochrane was but a tool of Ward and Pulver. That Lucy D. Ward is the daughter of Jeremiah Pulver. That neither Cochrane, Ward or Pulver paid the real value of the property at the time of the purchase, and had not Cochrane, by his agents, Ward and Pulver, agreed with Mrs. Scott that the Thompson lien should be paid, and that the property should stand fully charged with the lien, Mrs. Scott would never have executed any conveyance to Cochrane. That Cochrane's name was used by Ward and Pulver in the transaction for the purpose of defrauding the orators.

That on the 29th day of August, A. D. 1871, appellee Cochrane executed and delivered to appellees, Lucy D. Ward and Clarissa Pulver, a deed of said premises.

That the transaction was conducted on behalf of appellees Ward and Pulver, by their husbands, Sam. H. Ward and Jeremiah Pulver, that as a part of the purchase price from appellee Cochrane, appellees Lucy D. Ward and Clarissa Pulver, agreed to pay off and satisfy the Thompson lien, and that said lien was to remain and continue in full force. That all of the money evidenced by the notes from Mrs. Scott to Thompson was then due, except the interest to December 4th, A. D. 1863, which had been paid and endorsed thereon. That appellees Ward and Pulver well knew that the orators relied upon the lien evidenced by the attempted mortgage from Mrs. Scott to James S. Thompson (deceased), as security for the original purchase money due from Mrs. Scott.

That Eleanor C. Scott occupied the premises from December 4th, A. D. 1861, to February 15th, A. D. 1871, that since the latter date, appellees, Lucy D. Ward and Clarissa Pulver, by themselves or tenants have occupied said premises, that the reasonable rental value thereof was $150 per annum. That appellees, or some of them, have made slight improvements on the premises, but that the reasonable rental value of said premises far exceeds the amount paid by Mrs. Scott on the purchase money, with the value of the improvements added. That appellees Eleanor C. Scott, Roswell Cochrane, Lucy D. Ward and Clarissa Pulver, are wholly irresponsible and have no property other than the lands conveyed by Thompson (deceased), out of which the money due therefor can be made. That the orators have applied to all of appellees to pay said moneys; that Mrs. Scott insists that Cochrane took the property subject to the claim, and agreed to pay it, and Cochrane insists that Mrs. Ward and Mrs. Pulver took the title to the property and as a part of the purchase price agreed to pay the claim, and Mrs. Ward and Mrs. Pulver, insist that, although they agreed to pay the claim, the property is not bound therefor, and that they intend to hold it in spite of the orators.

That the acts and doings of Lucy D. Ward and Clarissa

Pulver with their husbands, are fraudulent, unjust and grossly inequitable towards the orators. That appellees Ward and Pulver have no interest in the property, except such as they acquired from Cochrane, and that their rights in the premises are subordinate to the rights of the orators.

Prayer that Lewis W. Thompson and Nancy S. Thompson, administrators, &c., may be decreed an equitable lien on said premises for said unpaid purchase money, and that they may be sold by the Master in Chancery to pay said claim, or that apppellees, Lucy D. Ward and Clarissa Pulver, be decreed within some short day to pay said unpaid purchase money, and in default thereof, that they convey the property to orators, Josie T. Brown, Vic. Thompson, Grace Thompson, Emily Thompson and Stella Thompson, or that the deed from James S. Thompson (deceased), to Eleanor C. Scott be annulled, and held for naught, and that appellees be required to surrender the possession of the property to orators, heirs of James S. Thompson (deceased), and that orators may have other and different relief, &c. Copies of the deeds and other documents are attached to the bill as exhibits. There was a decree dismissing the bill, from which complainants appealed. It is claimed that appellants have been guilty of laches, which should prevent them from having relief under a claim of a vendor's lien.

As the Bill was demurred to, that question is not before us. That defense should have been set up in an answer. Harris v. Cornell, 80 Ill. 54; O'Hallaman v. Fitzgerald, 71 Ill. 53; Beach v. Shaw, 57 Ill. 17; Hall v. Fullerton, 69 Ill. 448; School Trustees v. Wright, 11 Ill. 606.

There was no such laches, however, as should prevent complainant's from having the relief prayed for, if otherwise entitled to it. Appellees expressly agreed to pay the unpaid purchase money for Mrs. Scott, and deducted the amount from the price which they agreed to give for the lot. It does not become them to complain of laches which they could so easily have prevented by paying an honest debt.

We will now consider briefly whether a court of equity can enforce the performance of that which the moral code so

Thompson et al. v. Scott et al.

plainly requires should be done, if the facts alleged in this Bill be true.

We are aware that, notwithstanding the act of February 21, 1861, a deed or mortgage executed by a married woman, without her husband joining, is void as a conveyance of real estate as to her, though of her separate estate. Bressler v. Kent, 61 Ill. 426; Cole v. Van Riper, 44 Ill. 58; Lewis v. Graves, 84 Ill. 205; Judge Breese, who wrote the opinion in Young and wife v. Graff, 28 Ill. 20, overruled in Bressler v. Kent, dissented in Cole v. Van Riper, *supra.*

The doctrine of these two last mentioned cases, never was fully approved by the bar

The question in this case is not whether a married woman can make a conveyance of real estate without her husband joining, but whether she can make any kind of a contract in writing by which in equity, she can create a lien upon her real estate to secure her indebtedness for an unpaid portion of the purchase money. If the writing in question, called a mortgage, were not a conveyance of real estate, but merely a simple contract in writing, it would most unquestionably have been valid in equity to create a lien or security for the debt. Consequently, if the seal had been accidentally omitted, or if the writing had simply stated that she owed the debt aforesaid for the purchase money, and owned the real estate, and that Thompson, deceased, should have a lien on the land for the debt, it would have created a valid arrangement to be enforced in equity. See Carpenter v. Mitchell, 54 Ill. 126; Martin v. Robson, 65 Ill. 129; Parent v. Callerand, 64 Ill. 97; Greenleaf v. Beebe, 80 Ill. 520; and other cases as to her power to contract in relation to her real estate generally, and under the authority of Morrison v. Brown, 83 Ill. 562, the recording of it would have been constructive notice. Nor would a written statement that the writing was " given to secure payment of a part of the purchase money for the premises " be rendered inoperative because found in a trust deed or mortgage, made by a married woman without her husband joining in it. Such a truth may be told by her, and there is no law to render its utterance ineffectual, as is well said in that case.

Though the decision in Lewis v. Graves is apparently against appellants, yet when we consider the two together as parts of one whole, the reasoning is rather the other way.

In Lewis v. Graves, the declared intent in writing is treated as non-existing. In Morrison v. Brown, as creating the lien, the former is treated as a case of declaring a lien on real estate by decree in equity to secure an unsecured note. The latter treats the written statement placed on record as creating a lien to be enforced in equity, and notice of the writing by recording, is notice of the lien in equity. In the former, as well as in the latter, the writing was recorded, and if the writing in either case created the equity, there was constructive notice. In the case at bar, it was both actual and constructive. It seems to us that the fallacy in Lewis v. Graves, if there be one, is in not considering the writing as creating the lien, because it was not merely a contract in writing, but because it was also in a deed. In this regard the two cases conflict. There was a distinction between Lewis v. Graves and Bressler v. Kent, not noticed in the opinion on page 205 of the 84th Ill. There was a question whether Mrs. Winters, whose husband lived in Iowa, was a *sole trader*, according to our decisions, and capable to contract as such. Anderson v. Jackson, 66 Ill. 522; Love v. Moynehan, 16 Ill. 277; Prescott v. Fisher, 22 Ill. 390.

The case at bar is infinitely stronger for appellants than Morrison v. Brown was for Mrs. Brown. There is no mistake in this case about the writing having been intended to create a lien for the unpaid purchase money, and that appellees not only so understood it, but that they actually deducted the amount from the price they paid, and agreed to pay it as a part of their purchase money. Can it be that under such circumstances they can keep the land and not pay the agreed price? Are courts of equity established to foster, protect and encourage the very converse of the name they bear? The case of Hatch v. Morris, 3 Ed. Ch. (N. Y.) 313, is one like Morrison v. Brown, and the latter seems to us just like the one under consideration, except not as strong for appellants as this, for the reasons above stated. The mortgage in the New

Thompson et al. v. Scott et al.

York case was that of a married woman, invalid as a conveyance of real estate, because her husband did not join in its execution, but upheld as a contract by her, creating an equitable lien, because, to use an expression found in Lewis v. Graves, she had expressed her desire to create such a lien by her act in signing the mortgage.

The vice chancellor very justly says:  " Indeed, in equity there is a lien for unpaid purchase money as between vendor and vendee and all subsequent purchasers and mortgagees with notice."    Whether the doctrine of Bressler v. Kent and Lewis v. Graves may be sound or not, is perhaps a question which we ought not to consider too curiously.    Be that as it may, it would be monstrously inequitable to say in this case to appellees, alleged to be insolvent, keep your land and the main portion of the price you actually agreed to pay for it; that if there be any remedy for such injustice, it is not to be found in a court of equity and good conscience.

We think there are distinguishing features enough between this case and those of Cole v. Van Riper, Bressler v. Kent and Lewis v. Graves, not to render it necessary to shock our sense of justice by an affirmance of the decree in this case.

If, however, the decisions were just in point, we would feel bound by them, knowing full well that a general principle ofttimes operates unjustly in a particular case, and that it is the yielding to the pressure in bad cases which makes bad law. Appellees Ward and Pulver having actual notice of the unpaid purchase money, and *having* assumed to *pay it*, whether the mortgage is a good contract in equity, or an absolute nullity, there is a vendor's lien here for an amount which appellees Ward and Pulver *have agreed to pay*.    Equity and good conscience require that they should do as they agreed to.

The decree is therefore reversed and the cause remanded.

Reversed and remanded.