[No. 2966.   Aug. 2, 1926.]

## DAVIDSON v. CLICK.

[249 Pac. 100.]

### SYLLABUS BY THE COURT

When a husband, acting as agent for the community, purchases real property and takes a conveyance thereof in his own name, for the benefit of the community, and at the same time and as a part of the same transaction gives to the vendor a purchase-money mortgage on the property purchased for the purchase price or a part thereof, such purchase-money mortgage is not void by virtue of the provisions of chapter 84, Laws 1915, even though executed by the husband alone.

Appeal from District Court, Roosevelt County; Hatch, Judge.

Suit by Sam Davidson against Justin Click to foreclose a mortgage. From a judgment for plaintiff, defendant appeals. Affirmed and remanded for further proceedings.

T. E. Mears, of Portales, for appellant.

Albert Morgan, of Portales, for appellee.

[1]   31CJ p. 49 n. 3; p. 128 n. 63 New; 32Cyc p. 1267 n. 33.

## OPINION OF THE COURT

BICKLEY, J. Suit by appellee, plaintiff below, to foreclose a purchase-money mortgage on real estate. Appellant, one of the defendants, filed answer and cross-complaint alleging ownership of said real estate by virtue of a purchase at an execution sale without knowledge of appellee's claim of lien upon said land, except constructive notice, if any, by virtue of the recordation of the mortgage prior to the execution sale.

Sam Davidson conveyed by warranty deed certain real estate to Cleve George. A portion of the purchase price remained unpaid, and on the day of delivery of the deed to George and as a part of the same transaction, said George, being a married man, alone executed and delivered to Davidson the purchase-money mortgage. The mortgage was duly acknowledged by Cleve George. Said warranty deed and mortgage were recorded on the same day. Subsequently, the First National Bank of Elida recovered a judgment against George, a transcript thereof was recorded, and later the property described in the mortgage was levied upon and sold at execution sale to satisfy said judgment and was purchased by the defendant, Justin Click. The said mortgage contained the cl use, "This mortgage is given for deferred payment of part of the purchase price." The court filed a memorandum opinion in which appearings the following conclusion:

"The court is of the opinion that notwithstanding the laws of New Mexico relative to community property, which require the wife to join in the execution of any conveyance affecting the community real estate, the plaintiff in this case is entitled to foreclose his mortgage and is entitled to a prior lien as against the defendants. The mortgage is a purchase-money mortgage, and the court is of the opinion that whatever interest the community might have in and to said real estate, that interest is subject and junior to the mortgage which was executed simultaneously with the passing of the title from the seller, Sam Davidson, to the defendant, Cleve George; that the title passing from the seller passed with the lien for the purchase money impressed upon it, and the only title the community took subject to the lien of this purchase-money mortgage; therefore, the execution creditors, not being bona fide purchasers in good faith and standing only in the place of the defendant, Cleve George, and taking

Davidson v. Click, 31 N. M. 543

only such title as he possessed, the rights of the plaintiff are superior to the rights of said defendant; and said mortgage should be foreclosed, and the court so concludes as a matter of law."

Appellant contends that the mortgage in this case is void, under the provisions of chapter 84, Laws 1915, and, if void, the record thereof is not effectual as constructive notice to him. There is authority for the proposition that a conveyance void on its face is nevertheless entitled to record and that such record is constructive notice. In Morrison v. Brown, 83 Ill. 562, it was decided that where the statute provided for recording "deeds, mortgages, powers of attorney, and other instruments or writing, relating to or affecting the title to real estate," it was held that though a deed of trust by a vendee, a married woman, in which her husband did not join, to secure the unpaid purchase money for the land conveyed to her, had no validity as a conveyance, still it was operative to protect the vendor's lien for such unpaid purchase money, and was entitled to record so that the record would be constructive notice to a subsequent purchaser from the vendee of the existence of the vendor's lien. That case is cited with approval and with like reasoning in Thompson et al. v. Scott et al., 1 Ill. App. 641, and in Lomax v. Pickering, 173 U. S. 29, 19 S. Ct. 416, 43 L. Ed. 601.

We will proceed, however, to a consideration of the question as to whether a purchase-money mortgage is such a transaction as is contemplated by chapter 84, Laws 1915. The material part of that chapter is as follows:

"Sec. 16. **Power of the Husband over Community Property.** The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; And, Provided, Further, that any transfer or conveyance at-

tempted to be made of the real property of the community by either the husband or wife alone shall be void and of no effect.''

It is well to examine chapter 37, Laws 1907, section 16 of which was amended by said chapter 84, Laws 1915. That was An act in relation to property rights of husband and wife.'' It did not deal primarily with the formalities of the execution of conveyances and had no relation to the Registry Acts which are to be found elsewhere. Section 10 of the act defines community property and provides:

"All other property **acquired** after marriage by either husband or wife, or both, is community property." (blackface ours.)

Prior to the amendment by chapter 84, section 16 provided:

"The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate; Provided, however, That he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto, and; Provided, also, That no sale, conveyance or incumbrance of the homestead, which is then and there being occupied and used as a home by the husband and wife, or which has been declared to be such by a written instrument signed and acknowledged by the husband and wife and recorded in the county recorder's office of the county, and furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property shall be made without the written consent of the wife."

It is apparent that this enactment was for the protection of the wife, and the same may be said of the amendment declared by chapter 84, Laws 1915, which advances another step and requires the wife's consent to the transfer or conveyance of any of the real property of the community, whereas under the old section her consent was not required as to the conveyance of community real estate unless it was the homestead of the husband and wife. .

What is the meaning of the phrase, ''real property of the community,'' which may not be transferred or

conveyed by the husband or wife alone? Among the definitions of the preposition "of" as given by Webster's International Dictionary are "belonging to" and "denoting possession or ownership." This definition has frequently and uniformly been upheld by the courts. See Words and Phrases Judicially Defined. So we must construe the statute as though it read, "Any transfer or conveyance attempted to be made of the real property belonging to the community by either husband or wife alone shall be void and of no effect."

The next inquiry is, What estate is beneficially acquired by either husband or wife, or both, upon the delivery of the deed, when, as a part of the same transaction, either or both have simultaneously delivered back to the vendor a purchase-money mortgage for all or a portion of the purchase price? In order to determine this question, it is necessary to determine the character of the transaction and the nature of a purchase-money mortgage. There are difficulties in defining the word "mortgage." When we use the word in its usual sense, we mean that it is a conveyance of land as security. Mr. Jones, in his work on Mortgages (6th Ed.) § 15, propounds the question: "How, then, may a mortgage at the present day be defined?" and answers as follows:

"Baron Parke, speaking of the mortagor, said: 'He can be described only by saying he is a mortgagor.' In the same way it may be said that the most accurate and comprehensive definition of a mortgage is that it is a mortgage. As remarked by Lord Denman. 'It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other, in any other terms than those very words.' A definition broad enough to cover any view of the transaction, and any form of it, can only be that it is a conveyance of land as security."

The phrase "purchase-money mortgage" has a distinct signification and is limited in its scope. It is defined in 32 Cyc. at page 1267, as follows:

"A mortgage given, concurrently with a conveyance of land, by the vendee to the vendor, on the same land, to secure the unpaid balance of the purchase-price." (Citing

Mortgages, 27 Cyc. 1060, 1149, 1180, 1196, 1405, 1554; Purchase-Money.)

The effect of the transaction culminating in a purchase-money mortgage is, decribed in many text-books and decisions. A few quotations are as follows:

"A mortgage given at the time of the purchase of real estate, to secure the payment of purchase money, has preference over all judgments, mortgages, liens, and other debts of the mortgagor, to the extent of the land purchased. It is so provided by statute in several. states. In other states the same precedence is given to purchase-money mortgages without the aid of any statute. A purchase-money mortgage is good and effectual against the wife of the mortgagor, without her joining in the execution of it. The seisin of the husband is instantaneous only; and it is a well-settled rule that in such case no estate or interest can intervene." Jones on Mortgages (6th Ed.) section 468.

"It is a general rule, to which there is little dissent, that a mortgage on hand executed by the purchaser of the land contemporaneously with the acquirement of the legal tile thereto, or afterwards, but as a part of the same transaction, is a purchase-money mortgage, and entitled to preference as such over all other claims or liens arising through the mortgagor though they are prior in point of time; and this is true without reference to whether the mortgage was executed to the vendor or to a third person. The reason for the rule most frequently given is that the execution of the land does not for a single moment rest in the purchaser, but merely passes through his hands, and without stopping, vests in the mortgagee, and during such instantaneous passage no lien of any character can attach to the title." 19 R. C. L., "Mortgages," § 196.

That the rule rests on reasons further than those expressed in the doctrine of instantaneous seisin was claimed in Boorum v. Tucker, 51 N. J. Eq. 135, 26 A. 456, as follows:

"The equity of the holder of the purchase-money obligation, as against the grantee and debtor, rises higher than the mere contemporaneous execution of a mortgage to secure it. It does not rest alone upon the notion of instantaneous seisin, which preserves the right of the mortgagee as against previous judgment creditors of the mortgagor. * * * The true view, in my judgment, is, that a purchase-money mortgage is, in its essential nature, in equity, precisely the same thing, so far as the wife's dower is concerned, as a vendor's lien for unpaid purchase money. The effect of such a mortgage is a mere practical embodiment of the vendor's lien in legal shape, so that he may give notice of it to all the world, and be able to enforce it at law as well as in equity. The so-called vendor's lien

is nothing more or less than the right to come into a court of equity and ask it to appropriate the property to the payment of the debt; and that is precisely the right which is assured to him in writing by the formal execution and delivery of the mortgage. It is a formal and explicit statement in writing that the purchase money, to the extent named, is unpaid, and that the creditor is entitled to have the land sold to pay it. Thus far in equity. At law, it is also a conveyance of the land to the vendor in pledge. So that if we compare the case of a mortgagee of a purchase-money mortgage upon land coming into a court of equity and asking for foreclosure against the mortgagor and his wife, and that of a vendee of land without mortgage coming into the same court to enforce his so-called vendor's lien against the vendee and his wife, we shall find it difficult to distinguish between the cases—at least I do. In short, it seems to me that the execution of a mortgage to secure purchase money is, in equity, a mere continuance of the lien, and it is that circumstance, and that alone, that gives it efficiency in this court to bar dower, or rather, gives precedence over dower."

The doctrine is founded on justice because it would be inequitable to permit the wife to acquire a dower interest or, under our system, a community interest in land for which nothing was paid. This would be plainly apparent where the vendor conveys land without receiving any part of the purchase price and simultaneously takes back a purchase-money mortgage for the entire purchase price. And it was said in Protestant Epispocal Church v. Lowe Co., 131 Ga. 666, 63 S. E. 136, 127 Am. St. Rep. 243, speaking of the general rule:

"This applies as well where a part of the purchase money is paid, and the mortgage is to secure the balance, as where none of the purchase money is paid and the mortgage is for the whole (citing authority)."

So far as the justice in the operation of the rule upon creditors is concerned, it was well said in Rees v. Ludington, 13 Wis. 276, 80 Am. Dec. 741:

"Under this construction of the statute, the other question presented by the record is easily determined. The case stands as if the appellants had, at the time the building was commenced, been judgment creditors of Hull, whose judgments were a lien upon his equitable interest in the premises. If, having been such judgment creditors; their liens would have been prior to that of the respondent's mortgage, then they are now; but if not, then they are subsequent and must be postponed to the lien of the mortgage.

The authorities clearly establish that Rees' interest in or lien upon the premises for unpaid purchase money was not diminshed or impaired by his execution and delivery of a deed, when at the same time he received back a mortgage as security for the price. The settled doctrine in such case is that, when property passes through a man without his having paid for it, and with an understanding that he is at once to secure the payment by a mortgage or lien on the property itself, no right vests in him except that which is subject to such payment; that to the extent of the unpaid price, he is, in contemplation of law, never the owner until it is paid. The delivery of the deed to the vendee, and his execution and delivery of the mortgage or other security for the unpaid purchase money, are but parts of the same transaction, done in pursuance of the same agreement, and have such operation only as will best promote the lawful intention of the parties. Their operation is contemporaneous and connected, and affords no opportunity for the liens of judgment or other creditors of the grantee to attach to the legal estate, before that of the grantor for the unpaid price. The doctrine is wholesome and just. No claim can be more equitable than that of the upaid vendor to reimbursement out of the proceeds of the estate with which he has parted upon that express condition. Holding the estate, and having a right to retain the title until the payment of the purchase money shall be satisfactorily secured, why should not effect be given to the agreement between himself and the vendee in that respect? Certainly the creditors of the vendee ought not to complain, for without the agreement there would have been nothing upon which their rights could ever possibly have attached; and claiming a benefit from their debtor's purchase, by means of his contract with the vendor, they have no right to be placed in a better situation than the debtor himself. Their interest is based upon his and cannot in equity and justice go beyond it. Holbrook v. Finney, 4 Mass. 566 [3 Am. Dec. 243]; Chickering v. Lovejoy, 13 Mass. 51; Clark v. Munroe, 14 Mass. 351; Stow v. Tifft, 15 Johns, [N. Y.] 458 [8 Am. Dec. 266]; Love v. Jones, 4 Watts [Pa.] 465."

With the general idea expressed in the foregoing authorities, we find this court in accord. In Smith & Ricker v. Hill Bros., 17 N. M. 415, 134 P. 243, we decided that a purchase-money mortgage of chattels creates a superior lien to a prior general mortgage on the same property. In that case Duran contracted to sell chattels to Hill Bros., and Hill Bros. gave a mortgage on said chattels to Smith & Ricker, which was recorded. It is assumed that subsequently Duran transferred the property to Hill Bros., taking back a chattel mortgage for the balance of the purchase price. It

was the contention of Smith & Ricker that the prior mortgage reached the property described in such mortgage, though after acquired by Hill Bros. Describing the estate acquired by Hill Bros., the court said:

"Assuming that Duran knowingly accepted the note and mortgage, what then is the status af the appelles' and Duran's mortgage as to priority? Up to the time of taking the mortgage by Duran, if he knowingly took the same, neither he nor Hill Brothers had intended that the title should pass to the latter. It was at this time, if at all, that Durant first consented to the passing of the title to the property and the taking of a lien back upon the same. Therefore the title went to Hill Brothers, charged with the lien of Duran's mortgage, and it is to this title, so charged with this incumbrance, that the mortgage of the appellee attached, if at all.

"A leading case on this subject is U. S. v. New Orleans Railroad, 79 U. S. [12 Wall.] 362 [20 L. Ed. 434] in which it is said:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purpose of justice, and not injustice. Such an application of it as is sought by appellants would often result in gross injustice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchases property and gives a mortgage which is for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage or purchase money. And in such cases a failure to register the mortgage for purchase money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors.'

"In Walker v. Vaughn, 33 Conn. 577, the facts were exactly like the facts in the case at bar, and it was there held that the purchase-money mortgage, although junior in time, had precedence over the prior mortgage.

"In Farmers' Loan & Trust Co. v. Denver, 126 F. 46 [60 C. C. A. 588] the same principle is recognized, as follows: 'A mortgage of future acquired property attaches to the interests obtained by the mortgagor only, and is inferior to junior liens, incumbrances, or equities under which the property comes to the mortgagor.' "

It seems to us that whatever title Cleve George and his wife, Mollie George, as community members, acquired by the deed from Davidson to Cleve George, such title was charged with the vendor's lien for the unpaid purchase money, which ¡vendor's lien was put into the form of a purchase-money mortgage.

We are also aided by the construction given to said chapter 84, Laws 1915, by this court in Mapel v. Starriett, 28 N. M. 1, 205 P. 726. In that case, Starriett took title to real estate in his own name from the Santa Fé Pacific Railroad Company. He, without his wife joining, deeded it to Mapel. Upon suit by Mapel, Starriett claimed that when he took the deed from the railroad company, the real estate became community property, and, as his wife did not join in the deed to Mapel, such deed was void under chapter 84, Laws 1915. The court said:

"In deciding the validity of this deed the estate which Starriett held in the land must first be determined. If he held complete title to it, the land was community property of himself and his wife, and the deed in question was void under the statute for lack of her signature. But if he held this title only as trustee for the benefit of Mapel, he, having no interest in it, then a deed signed by himself alone was valid to convey his estate. * * * Neither he, nor his wife, nor the community, had any beneficial estate or interest in the property, and his wife's signature was not necessary to the transfer or conveyance of it."

We realize that the facts in Mapel v. Starriet, supra, presented a plain case of trust concerning which there would perhaps be no diversity of opinion, but it points the way in the case at bar because it is the general view that where the husband takes title to real estate and does not pay for it, he takes title as trustee for the benefit of the vendor until payment of the purchase money. There are a great many expressions in

the books to this effect. In Perry on Trusts and Trustees (6th Ed.) § 251, ''trusts that arise by equitable construction in the absence of fraud'' are discussed in chapter 7. The author considers the constructive lien or trust in favor of a vendor for his unpaid purchase money as similar to the constructive trust raised wherever one wrongfully obtains legal title to land which in equity and good conscience belongs to another. In section 232 it is said:

"Similar to this is the constructive lien or trust in favor of a vendor for his unpaid purchase money; for the vendor of land has a lien on the land for the amount of the purchase money, not only against the vendee himself and his heirs and other privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid. To the extent of the lien, the vendee becomes a trustee for the vendor; and the vendee's heirs, and all other persons claiming under him or them with notice, are construed by courts of equity to be trustees. This doctrine is well established in the jurisprudence of England, and it has been recognized and acted upon, in many of the United States. The principle upon which the lien depends is this: That a person who has obtained the estate of another ought not, in conscience, to keep it, and not pay the consideration money in full; and a third person who receives the estate with full knowledge that it has not been paid for, ought not, as a matter of equity, to be allowed to keep it without paying for it. It will at once be seen, that, as between the parties, this lien is founded in natural justice."

Many cases are collected in the note showing that this principle has been established in many states, though rejected in others. It seems that the same principles upon which the decision in Mapel v. Starriett, supra, depends is applicable also to the trust in favor of the vendor for his unpaid purchase money.

In Pomeroy's Equity Jurisprudence (4th Ed.) § 1249, it is stated that the general doctrine that the grantor of land who has sold and conveyed and delivered possession to the grantee, as well as the vendor in a contract for the sale and purchase of land who has delivered possession to his vendee, retains an equitable lien upon the land for the unpaid purchase money, although he has taken no distinct agreement or sepa-

rate security for it, is a firmly established doctrine of the English equity. He then gives a list of 23 states and territories in which the grantor's lien exists and also a list of the states belonging to the class in which the doctrine has either been condemned by the courts, or, after having been judicially accepted, has been abrogated by statute, or the question as to its existence does not seem to have been finally determined.

In Watson v. First National Bank of Roswell, 23 N. M. 372, 168 P. 488, we said that with us from early territorial days we had been in line with the weight of authority recognizing the existence of the vendor's lien, citing Bates v. Childers, 5 N. M. 62, 20 P. 164.

Mr. Pomeroy (section 1250) then proceeds to discuss the origin and rationale of the grantor's lien and refers to the diversity of opinion that we have heretofore illustrated. He says:

"It has been accounted for as a trust; as an equitable mortgage; as arising from a natural equity; and as a contrivance of the chancellors to evade the unjust rule of the early common law by which land was free from the claims of simple contract creditors."

And he proceeds to advance still another theory. In a note to section 1250, it is said:

"The commonly received opinion regards the lien as wholly referable to the doctrine of trusts, and as Constituting a species of constructive trusts. Blackburn v. Gregson, 1 Brown, Ch. 420, per Lord Loughborough; Mackreth v. Symmons, 15 Ves. 329, per Lord Eldon; Ringgold v. Bryan, 3 Md. Ch. 488; Moreton v. Harrison, 1 Bland, 491; Iglehart v. Armiger, 1 Bland, 519, 524, 525; 2 Story's Eq. Jur. § 1218 et seq.; Snell's Equity (5th Ed.) 136; Perry on Trusts, §§ 231, 232."

We adhere to the trust theory as a basis for arriving at our conclusion in this case, because it seems logical, and is supported by authorities of unquestioned eminence, and because this court, many years ago (1889), in Bates v. Childers, supra, adopted the trust theory, saying that:

"2 Story, Equity Jurisdiction, § 1218, defines the true character of the vendor's lien: 'This lien of the vendor

of real estate for the purchase money is wholly independent of any possession on his part; and it attaches to the estate as a trust, equally whether it be actually conveyed or only be contracted to be conveyed. It has often been contended that the creation of such a trust by courts of equity is in contravention of the policy of the statute of frauds, but, whatever may be the original force of such an objection, the doctrine is now too firmly established to be shaken by any mere theoretical doubts. Courts of equity have proceeded upon the ground that the trust being raised by implications, is not within the purview of that statute; but is excepted out of it. * * * The principle upon which courts of equity have proceeded in establishing this lien in the nature of a trust is that a person who has gotten the estate of another ought not in conscience, to be allowed to keep it, and not to pay the full consideration money.' Jones, Liens, section 1064, states the rule thus: 'The lien is presumed to exist in all cases, unless an intention be clearly manifest that it shall not exist. * * * Being an incident of the transaction, it is excluded only by facts which show an intention to exclude it. Want. of knowledge on the part of the vendor that the law gives a lien, or a secret intention on his part not to claim it, does not affect the right.' The true character of this lien is thus shown by authority not to be one created by express contract, requiring for its creation words of reservation, but one raised up as a matter of conscience, as an implication out of the transaction. The lien grows out of the sale and the duty of the buyer to pay the purchaser money. 'Where a vendor delivers possession of an estate to a purchaser without receiving the purchase money, equity, whether the estate be or be not conveyed, and although there was not any special agreement for that purpose, gives the vendor a lien on the land for the money.' 2 Sugd. Vend. 324.''

We come then to consider the process by which, and the condition in which, the beneficial estate vests in the members of the community a community property interest in real estate under the circumstances of this case. That the husband is the agent of the community and the manager of the community property, although he no longer has the absolute power of disposition of the real property of the community, was declared in Baca v. Village of Belen, 30 N. M. 541, 240 P. 803, and Beals v. Ares, 25 N. M. 459, 185 P. 780. We know of no legal restraint upon the power of the husband as such agent of the community to acquire in his own name real property for the community benefit, which property may be at the time of the purchase known to be incumbered with a lien. It would likely not be

asserted that the real property so acquired would be discharged of the lien merely because of the acquisition by the wife of an interest therein by operation of law. As was said in Thygesen v. Neufelder, 9 Wash. 455, 37 P. 672, cited in McKay on Community Property (2d Ed.) paragraph 688:

"* * * The interest of the wife in the community property is contingent upon the state of the affairs of the community as conducted by the husband."

It is not doubted that the husband may purchase real property for the community on credit. In El Paso Cattle Loan Co. v. Stephens & Gardner, 30 N. M. 154, 228 P. 1076, we said that community property is subject to community debts created by the husband alone, and in Brown v. Lockhart, 12 N. M. 16, 71 P. 1086, that it is a presumption of law that any debt created during coverture is a community debt. The purchase price for community property acquired by the husband for the benefit of the community is a community debt, and as was said in Nutter v. Fouch, 86 Ind. 451, treating of a vendor's lien: "It is unpaid purchase money that creates and sustains the lien."

It is a presumption that property conveyed to the husband during coverture is community property, but this presumption is not conclusive. The title may be shown to be separate or it may be shown to be in trust. If separate, of course, the statute does not apply because it is not community property and the wife need not join in the mortgage. If the conveyance be deemed to be in trust for the vendor to the extent of the vendor's lien, the trust continues until the lien is satisfied. It may be satisfied by being merged in the express lien of the purchase money mortgage.

Assuming that the husband has purchased real property on credit for the community and agreed to give a purchase-money mortgage for the unpaid purchase money, and the vendor delivered a deed to such vendee in consideration of such promise, then it is the high duty of the said vendee to comply with that condition

of the bargain, and, if he fails or refuses to do so, a court of equity would doubtless compel him to discharge this trust obligation. That he would have the power to give the purchase-money mortgage appears because that is the very condition of his receiving title to the property. Having executed and delivered the mortgage, the trust ends, and then, and only then, does the beneficial title inure to the community. The result is that the property comes to the community in the state of affairs of the community as conducted by the husband, that is, charged with the lien of the purchase-money mortgage validly executed by the husband alone as trustee for that very purpose. Such a mortgage, being valid and being properly acknowledged and recorded, is constructive notice to all the world.

From all of the foregoing we conclude that the purchase-money mortgage in this case is not void, and, being duly acknowledge and recorded prior to the inception of the claim of the appellant, was constructive notice to him, and such title as he acquired by purchase at the execution sale is subject to the lien of the purchase money mortgage.

Finding no error in the record, the judgment of the trial court is affirmed, and the cause remanded for further proceeding; and it is so ordered.

PARKER, C. J., and WATSON J., concur.