## SOLOMON COLE

*v.*

## HENRY VAN RIPER.

CONVEYANCE — *wife's separate estate.* The act of 1861, entitled "An act to protect married women in their separate property," does not empower a wife to convey her real estate without the consent and joinder of her husband in the deed, as required by section seventeen of our statute of conveyances. And although the act modifies during coverture the husband's estate by the curtesy, it does not enable the wife to divest him thereof, or prevent its taking effect after her death.

APPEAL from the La Salle County court; the Hon. P. KIMBALL LELAND, Judge, presiding.

This was an action of ejectment brought by Henry Van Riper against Solomon Cole, in the La Salle County Court to recover possession of a tract of land situate in the town of Whitfield, in La Salle county.

The plaintiff, to prove title, called George Munroe, who was sworn as a witness. Showed the witness a deed from John R. Snyder, and Elizabeth H. Snyder, his wife, to James Van Riper, of all of block number nine in the town of Whitfield, in La

Salle county, Illinois, dated July 22, A. D. 1862, and filed for record August 2, A. D. 1862.

James Van Riper went into possession, under that deed, of a store building, which stood on the east part of the block, and moved a stable from the east side of the block.

Cole, the defendant, at that time and before, was in possession of the tavern stand on the west part of the block — on the part of the block now in controversy in this suit — as the tenant of John R. Snyder; so Cole told me.

The plaintiff then offered the deed in evidence to the jury. The defendant objected. The court overruled the objection, and the plaintiff read the deed in evidence to the jury.

The plaintiff then read in evidence to the jury a deed from James Van Riper and Hannah Van Riper, his wife, to Ellen Cole.

Plaintiff then offered in evidence a deed from Helen Cole to himself.

It was agreed that the said Ellen Cole was the wife of the defendant at the date of said last mentioned deed.

The defendant objected to the giving of said deed in evidence to the jury, on the ground that Ellen Cole, being a married woman at the date of the deed, could not convey real estate without her husband, the defendant, joining with her in the conveyance. The court overruled the objection and permitted the deed to be read in evidence to the jury, and the defendant excepted.

The plaintiff then read in evidence the affidavit of A. Potter, on the back of the declaration, of the service of a copy of the declaration.

The plaintiff then called as a witness J. W. Brown, who testified:

The defendant was in possession of the premises in controversy at the time of the service of the declaration in this case on him; and just before the commencement of this suit I advised Cole to go out of this property, and he said that the property was his, and he should not go out until he was carried out.

The jury returned a verdict for the plaintiff.

The defendant moved for a new trial at common law, on the ground that the court erred in admitting in evidence the deed from Ellen Cole to the plaintiff, and in deciding that, by the laws of this State, a married woman can convey her own real estate without her husband joining with her in the conveyance.

The court overruled the motion for a new trial, and to the decision of the court in that behalf the defendant excepted.

The court then rendered judgment upon the verdict for the plaintiff.

The defendant then prayed an appeal, which was allowed on filing bond, as required by law.

Mr. OLIVER C. GRAY, for the appellant.

At common law the conveyance of a *femme covert* of her land, by deed, was absolutely void. She could only pass her freehold estate by fine or common recovery; and even if she levied a fine, without the concurrence of her husband, though it would be good against her and her heirs, it would not bind the husband, and he might avoid it. 2 Kent's Com. 150, 151; Shep. Touch. by Preston, 7; 1 Preston on Abstracts of Title, 336.

In this State the common law was changed by the seventeenth section, chapter twenty-four, Revised Statutes, entitled "Conveyances." Revised Statutes of 1845, p. 106.

But it is urged that the "act to protect married women in their separate property," approved February 21, 1861, has changed the law on this subject.

We insist that the act of 1861 does not purport or pretend to be a conveyance act; nor does it provide in any way for the conveyance, by the wife, of her separate property, nor does it contain any repealing clause.

It simply places her separate property under her sole control, to be "held, owned, possessed and enjoyed by her the same as though she were sole and unmarried," and exempts it from liability to execution or attachment for her husband's debts.

Chancellor KENT says:

" The reason why the husband was required to join with his wife in the conveyance was, that his assent might appear on the face of it, and to show he was present to protect her from imposition; and the weight of authority would seem to be in favor of the existence of a general rule of law that the husband must be a party to the conveyance or release of the wife. Such a rule is founded on sound principles arising from the relations of husband and wife." 2 Kent's Com. 152.

The record shows that Solomon Cole and Ellen Cole have children living, the issue of their marriage.

If the property in controversy became her separate property by the deed from James Van Riper to her, Cole is still tenant by the curtesy.

We insist that the act of 1861 has not repealed, by implication or otherwise, the law which gives and creates a tenancy by the curtesy.

If not, then the husband's curtesy cannot be affected by a deed executed by the wife alone; and if not, then Cole's right to a possession of the property cannot be destroyed by her deed to Henry Van Riper. But this right is effectually destroyed if Van Riper can recover in ejectment on the strength of her deed.

Messrs. J. O. GLOVER, and GEORGE C. CAMPBELL, for the appellee.

The first point made by the appellant, is upon the introduction in evidence of the deed of Ellen Cole.

The sole objection to the deed is, that it is the separate deed of a married woman, who, under the act of February, 1861, claimed the right to, and, as we say, did, by the deed in question, convey her separate property without the " control or interference of her husband."

It is insisted by appellant, that the law of 1861, which provides, that, as to the separate property of the wife, it " shall, notwithstanding her marriage, be and remain during coverture, *her sole and separate property, under her sole control, and be*

*held, owned, possessed and enjoyed by her, the same as though she was sole and unmarried ; and shall not be subject to the disposal, control, or interference of her husband ;* " does not authorize the wife *to convey* real estate without the consent of the husband, evidenced by his joining her in the deed, as required by section 17 of the 24th chapter of the Revised Statutes, entitled " Conveyances."

It is said repeals by implication are not favored in law, and this I concede ; but it is equally true, that, if the evident intent of a subsequent statute cannot be carried out unless it operates to repeal by implication a prior act, it will always be held to so operate. Dwarris on Stat. 673 ; *The King* v. *Middlesey*, 2 B. & Adolph, 818 ; *Bowen* v. *Lease*, 5 Hill, 221 ; *Ill. & Mich.* v. *Chicago*, 14 Ill. 335 ; *Maus* v. *Logansport P. & B. R. R.*, 27 Ill. 82.

The question to be considered, therefore, is, whether it was the intent of the act of 1861 to allow a married woman, as one of the methods of " controlling " and " enjoying " her separate estate, to *convey* it without *the control or interference* of her husband.

If this is the intent, it is plain that it cannot be carried out, if the husband may defeat a conveyance by refusing to join in the deed.

The only decision in our own court upon this statute, is in the case of *Emerson* v. *Clayton*, 32 Ill. 493.

It seems to me that the reasoning in that case is conclusive of this.

But the rule for which we contend is not without authority, and was expressly upheld in New York, under a law almost word for word with ours. *Blood* v. *Humphrey*, 17 Barb. 660.

By the law in question it is evident that the principle of the rule fails, for the wife has the administration of her separate estate ; she has not given up to her husband the control, or title to, or possession of any of it, and not being wanting in discretion, there is no reason why she should not contract.

Mr. Justice Lawrence delivered the opinion of the Court:

This was an action of ejectment, and one of the questions presented by the record is, whether under the law of 1861, known as the married woman's act, a married woman can convey real estate, acquired since that time, without the joinder of her husband. That act provides "that all the property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith from any person other than her husband, by descent, devise or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain during coverture, her sole and separate property under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried; and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

The legislature has here used very sweeping language, but it must be interpreted with reference to the evil intended to be cured, and in such manner as to be made to harmonize with other statutes which are left unrepealed, so far as such harmony can be secured without disregarding the legislative intent. It is a familiar maxim, that repeal by implication is never favored.

That this statute cannot be enforced according to its literal terms without impairing, to a very large extent, the strength of the marriage tie, will be evident on a moment's reflection. By the terms of the act, the property of a married woman is to be "under her sole control, and to be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried." If this language is to receive a literal interpretation, a married woman, living with her husband and children in a house owned by her, would have the right to forbid her husband to enter upon the premises, and he would be a trespasser in case he should enter against her will, and would be liable to her in damages. Such would be her rights as a *feme sole*. The wife could thus divorce her husband *a mensa et thoro*, without

the aid of a court of chancery. Or, again, suppose in a house
thus owned and occupied, the furniture is also the wife's prop-
erty. Can she forbid the husband the use of such portion as
she may choose, allow him to occupy only a particular chair,
and to take from the shelves of the library a book only upon
her permission? This would be all very absurd, and we know
the legislature had no idea of enacting a law to be thus inter-
preted. It is simply impossible that a woman married should
be able to control and enjoy her property as if she were sole,
without leaving her at liberty, practically, to annul the mar-
riage tie at pleasure; and the same is true of the property of
the husband, so far as it is directly connected with the nurture
and maintenance of his household. The statute cannot receive
a literal interpretation.

The object of the legislature was, not to loosen the bonds of
matrimony, or create an element of constant strife between
husband and wife, but to protect the latter against the mis-
fortunes, imprudence, or possible vice of the former, by
enabling her to withhold her property from being levied on
and sold for the payment of his debts, or squandered by him
against her wishes. Before the passage of this law, the hus-
band became the owner, by virtue of the marriage, of the per-
sonal property held by the wife at the date of the marriage, or
which came to her after that time, and was reduced by the
husband to possession, and he was also seized of an estate, dur-
ing coverture, in lands held by the wife in fee. This estate was,
in the eye of the law, a freehold, as it would continue during
their joint lives, and might last during his life, and was liable
to be sold on execution against the husband. 2 Kent, 130. The
personal property reduced to possession, and this estate in the
wife's land, were at the disposal of the husband, and liable to
be sold at his pleasure, for his own use, or to be levied upon
and sold by his creditors. These were the evils which the law
was designed to cure, and has cured. Although we held in
*Rose* v. *Sanderson,* 38 Ill. 247, that where the husband's estate
in the wife's lands had vested before the passage of this law, it
was not divested by the act, and might be sold by his creditors,

yet where the marriage has occurred, or the land has been acquired by the wife, since that time, it would doubtless be held, that this species of estate, known as an estate during coverture, has been substantially abolished, because its existence is wholly irreconcilable with both the language and the objects of this law.

But besides this estate which the husband acquired, by virtue of the marriage, in the lands of his wife, he also, if there was issue of the marriage born alive, became tenant by the curtesy of all lands of the wife which such issue might by possibility inherit, and this estate, unlike the other, terminated only with his own life. The law termed this estate initiate on the birth of issue, and consummate only on the death of the wife, but the initiate estate could be seized and sold on execution against the husband. Up to the period of the wife's death, it was substantially the same thing as the estate during coverture above mentioned. Now, although this estate is greatly modified by the act of 1861, it is not totally destroyed. During the life of the wife, the husband can exercise no control over his wife's lands as tenant by the curtesy, nor has he an interest in them subject to execution. We refer, of course, to lands where no interest had vested before the passage of the law. This estate, then, would be totally abolished, like the estate during coverture, were it not that tenancy by the curtesy continued after the wife's death, and, indeed, at that period became most material to the husband, since, up to that time, he had the enjoyment of his wife's realty by virtue of the other species of estate. While, then, the one estate is annihilated by a necessary implication, the utmost that can be said in regard to the other is, that it is materially modified. This estate is as old as the common law. It has always been recognized as existing in this State. It is not expressly abolished by the act of 1861, and, so far from being abolished by implication, it may be recognized as taking effect on the death of the wife, without conflicting in the slightest degree with the letter, spirit, or object of that law. On the contrary, the law itself provides, that it is "during coverture" that the property of the wife is clothed with

these new qualities, thus leaving the existing law unchanged, as to the disposition of the wife's property at her death. Moreover, it is hardly to be supposed, that the legislature would totally abolish this estate, without remodeling that of dower, or that they would work so important a change in our law of realty merely by implication. But, in fact, there is not even an implication that affects this estate after the death of the wife.

We have said thus much in regard to this estate, as a foundation for our opinion that this act does not enable the wife to convey her lands without the consent of her husband, manifested by joining in the deed. At common law the wife could only convey by fine or a common recovery, and a fine levied without the husband's consent was not binding upon him unless he was a party. 2 Kent's Com. 150. A conveyance in which the husband unites has been substituted in this country, and is the mode pointed out by the 17th section of the statute of conveyances. The estate of the husband in the wife's lands could not, therefore, be destroyed or impaired by the sole act of the wife. If this section of our conveyance act is repealed by the act of 1861, it is repealed by implication, which, as already remarked, the law does not favor. But where is the implication? Not certainly in the language of the act, which gives the wife the right to hold, own, possess and enjoy her property, for the terms give only the *jus tenendi* and not the *jus disponendi.* The power to own and enjoy, is entirely different from the power to dispose of, and the latter is not necessary to the exercise of the former. Neither is the power of disposing implied in that phrase of the law directing that her property shall be under her sole control, because that term, although indefinite, must be construed in connection with the terms "own, hold, possess and enjoy." In order that she may hold and enjoy she must necessarily control. But the control of the use and enjoyment does not imply the power to sell. Strictly speaking, the land, when conveyed, would pass away from her control and enjoyment.

But the chief reliance seems to be placed on the provision, that she is to have the power of controlling and enjoying as if

she were sole and unmarried, and hence it is contended she can convey as if she were sole, and her deed would have the same effect as the deed of a *feme sole*. If she can convey at all, because of the language in the act referring to the condition of a *feme sole*, her deed would undoubtedly have this effect, and would thus destroy the husband's estate by curtesy, and prevent him from resuming possession of the lands conveyed, after her death. We have already given the reasons why this act does not annihilate the estate of a tenant by the curtesy, or place it in the power of the wife to destroy it. If we are right in that conclusion, it necessarily follows, that it was not the intention of the legislature, when they gave her the power to enjoy as a *feme sole*, to give also the right to convey as a *feme sole*, and thereby destroy the husband's estate.

There is another reason for not holding that this act enables the wife to convey by her own deed. Before the passage of the law, acts similar in their general character had been passed in several of our sister States. The law of New York expressly gave the wife the power of conveyance. The laws of Pennsylvania and New Jersey did not, but employed terms of the same general character as our own. Our legislature chose to shape our law after the latter models. It is but a just inference, that the omission of any words, in our act, expressly giving the power to convey, was the result of design and not of accident.

The Supreme Courts of Pennsylvania and New Jersey have given to the acts of these States the same construction adopted in this opinion. *Walker* v. *Reamy*, 36 Pa. St. 410; *Naylor* v. *Field*, 5 Dutcher, 287.

We should add, in conclusion, that we have not considered the question of the power of the wife to dispose of her personal property. That may depend upon different considerations. The power to sell has sometimes been considered a necessary incident to the ownership of personal property. But a majority of the court are of opinion that the act of 1861 does not authorize a married woman to convey her realty in any other manner than that pointed out by the statute of conveyances. In holding

this however, we do not question the rule laid down in *Emerson* v. *Clayton*, 32 Ill. 493, as to the right of a married woman to bring a suit in her own name. That right is a necessary incident to the law.

As the decision of this question disposes of this case, it is unnecessary to consider the other questions raised.

*Judgment reversed.*

BREESE, J., dissents.