CORNELIUS HOGAN

*v.*

ELLEN HOGAN.

1. MARRIED WOMAN—*contract with husband prior to revision of* 1874. A written agreement by a married woman with her husband, made prior to the time the act of March 30, 1874, relating to husband and wife, took effect,

for the sale or conveyance of the wife's real estate to her husband, is void, and can not be specifically enforced, although the husband may have paid or performed the consideration fully.

2. SAME—*alienation of her real estate at common law.* At common law a married woman was utterly powerless to convey her real estate by deed or other instrument, and she could only accomplish that object by levying a fine or suffering a common recovery. Her contracts were not merely voidable, but absolutely void.

3. SAME—*power to dispose of her real estate by statute of* 1845. Under the laws in force in 1845, a married woman might convey her lands by joining with her husband in a deed therefor properly acknowledged and certified, but her acknowledgment was the operative act to pass the title, and not the delivery of the deed, and a substantial compliance with the statute was required. Under those laws, her contracts made separately, or jointly with her husband, could not be enforced, even though she had received the full value of the lands as purchase money. The married woman's act of 1861 did not change the rule in this respect.

4. SAME—*under act of* 1869. Under the act of March 27, 1869, a married woman might, by joining with her husband in the execution of any deed, mortgage, conveyance, power of attorney, or other writing relating to the sale, conveyance or other disposition of real estate, bind and conclude herself the same as a *feme sole.* Under this act, the acknowledgment ceased to be the effective means to work the transfer of title, and the certificate thereof was placed on the same footing with that required in respect to a *feme sole,* and without any acknowledgment proof of her execution of the deed or other writing might be made as if she were sole. And from that time her contracts executed jointly with her husband, respecting her lands, might be specifically enforced in equity.

5. SAME—*under act of* 1874. It was not until the act of March 30, 1874, in relation to husband and wife, went into force, that a married woman could sell and convey her real property to the same extent and in the same manner the husband could sell and convey property belonging to him, or that she could have done had she been sole. Until that time the husband must have joined with her, or her deed would have been inoperative and void, and her contract for the disposition of her real estate would have had no binding force.

6. SAME—*under act of* 1869. Under the act of 1869, the contract, to bind a married woman, must be in writing, and the husband must join in its execution. When it is from the former to the latter, in which the wife agrees to convey real estate to him, upon condition he performs either one of two acts specified, and he does not even execute the same so as to be bound to perform on his part, the contract does not come within the statute. Even if he executes such a contract, it does not come within the statute. They must both be parties of the same part, and not in opposition to each other.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

The appellant, Cornelius Hogan, filed a bill against ,the appellee, Ellen Hogan, his wife, for the specific performance of the following contract:

"*Chicago, December* 30, 1871.

"I hereby agree to deed and convey to my husband, Cornelius Hogan, in his own name, forever, the certain piece of real estate, to-wit: sub-lot 10, of lot 4, in block 21, in the Canal Trustees' Subdivision of the City of Chicago, Illinois, providing when my husband, Cornelius Hogan, will put improvements to the amount of \$2,000 on lot 15, in block 53, in School Section Addition to Chicago, Illinois, or pay off a mortgage to amount of \$2,000 on said lot, which is coming due July 8, 1873.

ELLEN HOGAN."

The bill also contained a prayer for general relief. A demurrer was sustained to the bill, and a decree entered dismissing it at the costs of appellant.

Messrs. TULEY, STILES & LEWIS, for the appellant.

Mr. E. S. ASAY, and Mr. W. L. HIRST, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

At common law a married woman was utterly powerless to convey her real estate by deed or other instrument, and she could only accomplish that object by levying a fine or suffering a common recovery. Nor could she enter into any valid or binding contract for its sale or conveyance; such contract, if attempted, was not merely voidable but absolutely void; equity had no jurisdiction to decree the specific performance of such contract, and she was not estopped from afterwards asserting her title because she had received the value of the land as purchase money.

These clogs to alienation have gradually been removed by statutory enactments. Under section 17 of the Conveyance act contained in the revision of 1845, the wife could, by joining with her husband in the execution of a deed, and by making a formal and solemn acknowledgment before some judge or other designated officer, a certificate of which acknowledgment was required to be indorsed on or annexed to the conveyance, as effectually dispose of her realty as if she had been sole and unmarried.

Under said statute, it was only in the precise mode prescribed thereby, by the husband joining in the execution of the deed, and by a certificate showing an acknowledgment in substantial compliance with the statutory requirements, that the wife could convey her real estate. It was the acknowledgment of the *feme covert* which was the operative act to pass the title, and not the delivery of the deed.

It was also the established doctrine, under said statutory provision, that a married woman would not be compelled to convey her land upon any contract she alone, or jointly with her husband, might have made, and this even though she had been paid the full value of the land as purchase money. *Spurck* v. *Crook,* 19 Ill. 415; *Moulton* v. *Hurd,* 20 id. 137; *Russell* v. *Rumsey,* 35 id. 362; *Rogers* v. *Higgins,* 48 id. 212.

The married woman's act of 1861 had no effect to change the law in these regards; her conveyance must still have been jointly with her husband, and must have been accompanied by the statutory certificate of acknowledgment. *Cole* v. *Van Riper,* 44 Ill. 58; *Bressler* v. *Kent,* 61 id. 426; *Lewis* v. *Graves,* 84 id. 206; *Trustees* v. *Davison,* 65 id. 125. And equity would not enforce specific performance of her contract to convey, because she was not competent to make such a contract. *Oglesby Coal Co.* v. *Pasco,* 79 Ill. 164. The act gave to the wife no power to dispose of her estate, but only enabled her to hold, own, possess and enjoy it, under her own sole control and for her own sole and separate use.

The act of March 27, 1869, provided, in substance, that any *feme covert* above the age of 18 years, joining with her husband in the execution of any deed, mortgage, conveyance, power of attorney, or other writing of or relating to the sale, conveyance, or other disposition of lands or real estate, should be bound and concluded by the same, in respect to her right, title, claim, interest or dower in such estate, as if she were sole and of full age; and that the acknowledgment or proof of such deed, mortgage, conveyance, power of attorney, or other writing, might be the same as if she was sole.

This latter statutory enactment worked a marked change in the law. Thereafter, the acknowledgment ceased to be the effective means to work the transfer of title. The certificate of her acknowledgment might thenceforth have been the same as that required in the case of a *feme sole;* and without any acknowledgment whatever, proof of her execution of a conveyance might have been made as at common law. So, also, from that time forth, her contract in writing, made jointly with her husband, for the disposition of her lands, became binding upon her, and might have been enforced in a court of chancery, and she compelled to a specific performance of the same.

One only distinction between her condition and that of an unmarried woman, in reference to the alienation or disposition of real property, was still retained. The law still required, before she could convey or make any valid contract for the disposition of her lands, her husband should join with her in the deed or other writing. And this distinction and limitation upon her power of alienation was still retained in the revisement of the Conveyance act in 1872. Pub. Laws, 1871, 1872, p. 287, secs. 18, 19. It was not until the ninth section of the act of March 30, 1874, in relation to husband and wife, went into force, that a married woman could sell and convey real property to the same extent and in the same manner the husband could property belonging to him, or that she could have done had she been sole. Until that time her husband

must have joined with her, or her deed would have been inoperative and void, and her contract for the disposition of her real estate, would have had no binding force, and she would not have been required to perform it, even though she had received, as a consideration therefor, its full value.

The agreement here in question, for the conveyance of sub-lot 10, of lot 4, in block 21, in the Canal Trustees' subdivision of the City of Chicago, was made on the 30th day of December, 1871, some years before this last enactment. Its date was subsequent, however, to the act of 1869, enabling her, by joining with her husband, to execute any writing relating to the sale or disposition of her lands, and providing the proof of such writing might be the same as if she was sole, and that she should be bound and concluded by such writing as if she were unmarried.

It will readily be seen the agreement now before us does not comply with the substantial requirements of this act of 1869. It was expressly provided therein, she should join with her husband in the execution of the writing, whereas this contract purports to be executed solely by her, and is signed only by her. The husband does not sign it, nor does he agree therein to either put the improvements on the lot or to pay off the mortgage. She is the only one who agrees to do anything, and she only agrees conditionally, that if he does either of two specified things, then she will deed or convey to him.

By the terms of the statute, the husband must join in the writing; and how can it be said he has joined in this writing which neither binds him to do or not to do anything, and which he has never signed or executed in any manner or form. It will be noted, the statute requires a *written* contract. It says, "or other writing," and such "writing" the husband must join in executing, or else the "writing" is not brought within the statute. A mere verbal contract, or a contract growing out of matters *in pais*, would not be a valid contract to bind the wife, or one that she could be compelled to perform.

Were this an agreement with a party other than her husband, it would require no argument to show the writing here was not that demanded by the statute. The writing being as it is, we are unable to see upon what ground we can say, as to this particular contract, the antecedent common law and statutory requirement shall both be ignored, and the wife held to be bound by an instrument invalid under the one, and expressly excepted from the operation of the other.

Again, the reason why, prior to some very recent legislation, the husband was uniformly, in all the States, required to join with his wife in the conveyance of her land, was that his assent might appear on the face of the deed, and show he was present to protect her from imposition. Chancellor KENT says, "The weight of authority would seem to be in favor of the existence of a general rule of law that the husband must be a party to the conveyance or release of the wife; and such a rule is founded on sound principles arising from the relations of husband and wife." 2 Kent's Com. 152. This same sound principle and general rule of law was evidently in the legislative mind when it was provided, the husband should join with the wife in the execution of the writing before it would be effective to bind or conclude her rights or interest. It was contemplated, not only he should sign the writing, but sign it *jointly* with her, as a party of the same part; that he should be to her, in so important a transaction, a shield against imposition, and a protection against folly and improvidence— not that he should be her antagonist in a contest over her property, dealing with her as a stranger at arm's length, and seeking to get the better of the bargain. Surely, this latter was not what was intended by the statutory requirement that he should join with her in the execution of the deed or writing.

Even if the husband had signed the instrument now before us, but as a party of the other part, as he must necessarily have done, if at all, it would not, in our view, have brought this contract within the statute so as to make it valid against the wife. That which she was entitled to, under the statute and the

28—89 ILL.

policy of the law, was the aid and assistance of her husband, exercised in her behalf and for her interests,—not that he should make and sign the contract in the attitude of an opponent—of one working against her interests in an effort to obtain her land for himself. We feel well assured the writing now before us is not one within either the language or the meaning of the statute. This, which we have thus said in this connection, is said from the standpoint of the law as it stood at the time the supposed contract was made. Since then the law and its policy have been radically changed by chapter 68 of the Revised Statutes of 1874.

The views herein expressed are entirely consistent with the former decisions of this court, including those cited by appellant in his brief.

*Cole* v. *Van Riper, supra,* was the first case considered by the court, in which the question of the power of the wife to convey her separate real estate, held under the law of 1861, arose, and it was there held she could not alienate it without the consent and joinder of her husband in the deed. This court there said: " The language of the act gives the wife the right to hold, own, possess and enjoy her property; the terms give only the *jus tenendi* and not the *jus disponendi.* The power to own and enjoy is entirely different from the power to dispose of, and the latter is not necessary to the exercise of the former. Neither is the power of disposing implied in that phrase of the law directing that her property shall be under her sole control, because that term, although indefinite, must be construed in connection with the terms ' own, hold, possess and enjoy.' In order that she may hold and enjoy, she must necessarily control. But the control of the use and enjoyment does not imply the power to sell. Strictly speaking, the land, when conveyed, would pass away from her control and enjoyment."

The doctrine subsequently announced, that the wife must sue alone for injuries to her separate property, was in exact conformity with the principle of this decision; she owned,

held, possessed and enjoyed her separate property, and therefore properly could sue for a trespass on or injury to it.

In *Cookson* v. *Toole*, 59 Ill. 515, it was decided, a wife may make a contract in relation to her separate property, but the contract spoken of was one for work and labor in and about the improvement and cultivation of her farm, which was her separate property under the act of 1861, and she could not hold, possess and enjoy the farm, without power to contract for its cultivation and improvement. To the same effect are numerous other cases.

In *Parent* v. *Callerand*, 64 Ill. 97, it was held, a married woman could execute a lease for a term of years on her land without her husband joining in the execution thereof; but this was on the express ground that unless she had such power she could not own, possess and enjoy her separate estate the same as though she was sole and unmarried.

So also, in *Patten* v. *Patten*, 75 Ill. 446, it was decided, the wife may contract with her husband to manage her separate estate as her agent, and that she may maintain a suit against him to compel him to account for and pay over the income derived therefrom. But all this was within the plain scope of her power to own, hold, possess and enjoy such estate, and control for such purposes, precisely as if she was sole or unmarried. It is true, the justice delivering the opinion of the court there said: "As to such estate and her relation thereto, she has no husband; he is as a stranger, even during coverture;" and also said, " husband and wife, as respects her separate estate, stand before the law as strangers." We must, however, understand all this as said with reference to the case then before the court, and, as applicable to the facts of that case, it was correct. The language used was proper so far as regards the powers given the wife by the act, the *jus tenendi*, but is incorrect when sought to be applied to a power not given therein, the power of alienation—the *jus disponendi*. Within the powers conferred by the act, she may contract with her husband as though she was un-

married; but as all the cases show, no power to convey or dispose of her estate was so conferred.

The Iowa cases cited by appellant are predicated upon a statute materially different from ours, one section of which expressly provided that "a married woman may convey her interest in real estate in the same manner as other persons;" consequently they throw no light on the case at bar.

It is also urged, that, independent of the statutes of 1861 and 1869, the present bill may be maintained, and that when contracts of the kind in question have been wholly or in part performed they have been sustained. Reference is made to several decided cases.

In *Sweeney* v. *Damron*, 47 Ill. 450, the husband had, in good faith and without fraud upon creditors, conveyed property to his wife. Such a contract, said the court, "when executed, is valid and binding."

In *Dale* v. *Lincoln*, 62 Ill. 22, it was conceded the deed, at law, was void, but decided it would be upheld in a court of equity. That case, like the former, was free from any suspicion of fraud, and the contract was fully executed, and the conveyance was from the husband to the wife, and, moreover, the property had, subsequent to the husband's death, been sold by her for its full value.

*Shepard* v. *Shepard*, 7 Johns. Ch. Cases, 57, was also where there was an executed conveyance from the husband to the wife.

*Livingston* v. *Livingston*, 2 Johns. Ch. Cases, 537, is claimed to be a precedent in point. In that case the husband did not seek the conveyance of the wife's estate to himself. The decision was based on the ground, for which authority was cited, that a husband and wife may contract, for a *bona fide* and valuable consideration, for a transfer of property *from him to her*, and that equity will decree a performance of *such* contract. The bill was filed, not against the wife, but against her heirs at law. The husband had procured the conveyance of a valuable estate to her, just prior to her sudden death,

which prevented the repayment to him of the moneys he had advanced, under the contract made, in payment for the estate. The contract was for an estate to vest in her, and therefore, within the rule announced, a contract that would be recognized in equity. Had the contract been for an estate to pass from her to him, the rule announced would have had no application. We have been cited to no case, nor are we aware of any, in which it has been held, the wife will, by a court of chancery, be decreed to perform her contract for the conveyance of her estate to her husband. There is a marked difference between such a case and the Livingston case.

It is further claimed, if the defendant, having obtained the benefit of complainant's money for improvements on her separate estate, under a promise of compensation, is now permitted to disregard her promise and retain such benefit, it would be the consummation of a gross and palpable fraud, and that to prevent such a result a court of equity will interfere. A husband, at least as much as a mere stranger, dealing with a wife, must be held to know both the fact and the law, and to fully contemplate the legal effect of the transaction in which he is engaged. Equity follows the law, and never abrogates or violates its provisions or policy, and will not remove disabilities that the law has imposed.

In *Russell* v. *Rumsey, supra,* it was said, equity has no jurisdiction to specifically execute a contract of a *feme covert* for the conveyance of her real estate, and that if she has acted in bad faith, it is the misfortune of the party dealing with her. *Rogers* v. *Higgins, supra,* is to the same effect, and it is there held, a married woman attempting to sell her real estate without authority, is not estopped afterwards to assert her title because she received the value of the land as purchase money, and that such act is not a fraud. In *Oglesby Coal Co.* v. *Pasco, supra,* the cases were reviewed, and the doctrine announced that the married woman would be liable only in case of pure tort, but relief would be denied when the conduct of the wife was so connected with contract that the action or

proceeding sounded in contract. And in that case the court refused to decree performance of the contract, although the married woman had received the full consideration of the land.

In this case, the agreement of December 30, 1871, was void. Its performance can not be decreed, nor can it operate as a mortgage or as a contract to give a lien upon the wife's real estate.

The court below did not err in sustaining the demurrer and in dismissing the bill. The decree is affirmed.

*Decree affirmed.*