THIS case came up from the Superior Court in and for New Castle County on a case stated and question of law reserved for a hearing before all the judges in the Court of Errors and Appeals. The case stated was as follows: Scattergood Allen died June 8, 1873. By his will dated May 30, 1873, he devised to his sister Laura Evans, the plaintiff, in fee simple an undivided interest in the house and lot of land, No. 914 West street, Wilmington, Delaware. She was at that time the wife of Edwin B. Evans, and had by him issue born alive and capable of inheriting her estate. Against her said husband there was and is upon the records of the Superior Court of the State of Delaware in and for New Castle County, a judgment, being No. 795, November term, 1875, in favor of William J. Fell, for two hundred and fifty dollars, real debt, interest from April 5, 1876, and entered April 24, 1876. By deed dated March 1, 1879, the said Evans and wife conveyed all their interest in the land to William *Page 213 
W. Lobdale, the defendant, who upon the delivery of the deed refused to pay the purchase money, and still retains the same, claiming that the judgment is a lien on the inchoate right of curtesy of said husband in said land.
The question of law thereupon stated and reserved was that if this court shall be of opinion that the said judgment is not a lien or incumbrance upon the said land and premises, their judgment shall be rendered in favor of the said Laura Evans and against the said William W. Lobdale for the sum of two hundred and seventy-eight dollars and seventy-five cents with interest from the 25th day of March, 1878; and if this court shall be of the opinion that the said judgment is a lien upon the said lands and premises, their judgment shall be rendered against the said Laura Evans and in favor of the said William W. Lobdale for costs in this case.
Lore for the plaintiff. The several acts of assembly for the benefit of married women were enacted prior to the devise of the land and premises in question to the plaintiff, who was then a married woman, and were for the direct purpose of exempting their property from liability for the debts or contracts of their husbands. Rev. Code (of 1874) 343; Del. Statutes, 15 Vol., 289. And being remedial statutes they should be so construed as to advance the remedy and effect the object of the law. Billings v. Baker, 28 Barb., 343; Johnesv. Johnes, 3 Dow., 15. The statute abolishes the husband's freehold interest in his wife's real estate jure uxoris, also his tenancy by the curtesy initiate and leaves only a possibility contingent on such husband surviving his wife, which is not subject to execution. Billing v. Baker, 28 Barb., 343; Cole v.
Van Riper, 44 Ill., 58; Stewart v. Ross, 50 Min., 776; Greenwich Nat. Bank v. Hall, 11 R.I., 124; Silsby v.
Bullock, 10 Allen, 94; Porch v. Fries, 3 C.E. Green (N.J.), 205.
V. Du Pont, attorney for defendant did not appear in the case in this court.
The question reserved for decision is, has the husband any estate or interest in his wife's land which is bound by the judgment?
The contention of the plaintiff is:
1. That the several acts of assembly for the benefit of married women were enacted for the purpose of exempting her property from liability for the debts or contracts of her husband.
2. That being remedial statutes they should be so construed as to advance the remedy and effect the purpose of the law; and
3. That the statutes abolish the husband's freehold interest in his wife's real estate, jure uxoris, also the tenancy by the curtesy initiate, and leave only a possibility contingent on the husband surviving his wife, which possiblity is not subject to execution.
Before the passage of these several acts for the benefit and protection of married women, and which taken together may be considered as one statute, the real estate of the wife was subject to the control of her husband and liable for his debts, according to the common law then in force in this State. If, upon her marriage, or at any time during coverture, she was seized of an estate of inheritance in land, her husband became seized of the freehold, jure uxoris, and he took the rents and profits during their joint lives. This was an estate in him for the life of the wife only, unless he was also tenant by the curtesy. It was an estate in him for his own life if he died before his wife, and in that event she took the estate again in her own right. If the wife died before the husband without having had issue, her heirs immediately succeeded to the estate. If there had been a child of the marriage born alive, the husband took the estate absolutely for life as tenant by the curtesy, and on his death the estate went to the wife or her heirs. The husband, therefore, might become successively possessed of three several interests in his wife's lands.
1st. A freehold interest by right of the wife; 2d. Tenancy by the curtesy initiate on the birth of a child and 3d. Tenancy by the curtesy consummate if he survived the wife, having had issue. 2 Kent. Com., 130; 2 Bl. Com., 128. *Page 215 
The rights of the husband could be assigned by him to a purchaser, were liable for his debts, and could be seized and sold on execution by his creditors, and were therefore subject to the lien of any judgment that might be recovered against him. Has the statute for the benefit of married women abolished this lien? We answer this question in the affirmative. The first section of the act of 1873, as amended by the act of 1875, provides; "That the real and personal property of any married woman, which has been heretofore acquired, is now held, or which she may hereafter acquire in any manner whatsoever, from any person other than her husband, shall be her sole and separate property, and the rents, issues and profits thereof shall not be subject to the disposal of her husband, nor liable for his debts." The fourth section give to the wife the right to dispose of her property both real and personal by will; "but such disposal shall not affect the rights of the husband as tenant by the curtesy; and if she die intestate, her property both real and personal shall descend to her heirs as now provided by law." Amend. Sts., 479; 15 Del. Laws, 289. The intent of the statute is clearly expressed and is too plain to be misunderstood. It was to release the wife's property from the control of her husband during her life, and to exempt it from all liability for his debts. This intent would fail if a judgment against the husband was held to be a lien on his possible interest in his wife's land, so as to prevent its alienation by them no matter what advantages might be derived from a sale.
Under the operation of the statute, the rents and profits of her land are no longer subject to her husband's disposal, as formerly, nor liable for his debts. It was designed to abolish both his freehold,jure uxoris, and the tenancy by the curtesy initiate, leaving him only the tenancy by the curtesy consummate in the event of his surviving his wife, and having had issue by her during the marriage. This contingent right may now, by force of the statute, be extinguished by the joint conveyance of the husband and wife to a purchaser, as in the present case, and the grantee would take a title free of all liens and incumbrances against the husband. He no longer has any interest or estate in *Page 216 
his wife's lands during her life; she holds them as "her sole and separate property," and when the husband and wife join in executing a conveyance of them, they are conveyed, as she held them, free from any estate or interest of her husband. At common law the tenancy by the curtesy vested on the birth of issue, and the husband began to have a permanent interest in the lands, 2 B1. Com., 127; but the statute has abrogated this vested right, and there is now no marital right in the wife's real estate while she is alive on which a judgment against the husband can fasten; and when he unites with the wife in making a deed of bargain and sale of her lands, he concludes himself by way of estoppel from claiming any interest or estates in them after her death. 4 Kent Com., 261 Notes; Potts v. Dowdall, 3 Houst., 369.
Chancellor Zabriskie, in giving a construction to a statute of New Jersey, in its general features like the one under consideration, says: "The act, though inconsistent with the estate of curtesy initiate, does not defeat the husband's curtesy at the death of the wife. . . .
The act only protects her estate during life; it does not at her death affect the law of succession as to real and personal estate". Porch v. Fries, 3 C.E. Green (N.J.), 1205.