Cora O'Dea, Defendant in Error, v. John E. Throm, Plaintiff in Error.

Gen. No. 8,205.

578

Opinion filed July 2, 1928.

James Vause, Jr., and Carl D. Kiger, for plaintiff in error; J. I. Dilsaver, of counsel.

A. C. and Ben F. Anderson, for defendant in error.

Mr. Justice Eldredge delivered the opinion of the court.

Defendant in error, Cora O'Dea, obtained a judgment in the circuit court of Coles county for the sum of $5,100 against plaintiff in error, John E. Throm, in an action of assumpsit brought to recover commissions for procuring the sale of certain real estate, to reverse which judgment this writ of error is prosecuted.

In 1925, Cora O'Dea, defendant in error, resided, with her husband, at Mattoon, Illinois, and had lived in that city for 35 years prior to the bringing of this suit. John E. Throm, plaintiff in error, at that time was also a resident of the city of Mattoon and had lived there for a number of years. During the years 1924 and 1925, Mrs. O'Dea had spent some of her time in Miami, Florida, engaged as a real estate broker. Throm had invested quite extensively during those years in Florida real estate and had engaged the services of Mrs. O'Dea in a number of real estate transactions, not only in the purchase and sale of real estate, but in the collection of principal and interest on sales and mortgages, the payment of taxes and in other matters incidental to such transactions. One of his deals, through Mrs. O'Dea, several months prior to the time when the matter in controversy in this suit arose, was the purchase of lots 163, 164 and 165, of Auburndale in the city of Miami for the sum of $28,500. While Mrs. O'Dea was at home in Mattoon in the summer of 1925 and prior to the 19th day of July, she met Throm on the street in that city and the latter told her that he would like to have $1,000 a front foot for the Auburndale lots; that there were 102 feet and not to forget that there were 2 feet over the regulation 50-foot front lots and that he would make an immense profit as he only paid $28,500 for them. These lots fronted on Flagler Street and were commonly referred to by the parties as the "Flagler Street lots." Mrs. O'Dea left Mattoon for Florida July 19, 1925. On July 22, she sent Throm the following telegram: "Believe I can get you one thousand dollars a front foot

for Flagler St. lots with five thousand cash binder and twenty-five thousand cash bal one two three years 8 percent shall I accept it haven't had an offer but will try if you say so wire care Belfoort Apts. Northeast Third St." On August 7, 1925, she sent the following telegram to Throm: "Have sold your Flagler St. lots for one hundred and two thousand dollars or one thousand dollars a foot one third cash balance one and two years five thousand binder shall I mail binder or place on Hollywood lots." Throm, at this time, was not in Mattoon and the latter telegram was answered by his son Gardner Throm, as follows: "Dad is in Kansas. Deposit binder to your account until he gets back home which will be about a week. He will then let you know what to do. Gardner Throm." After Throm's return to Mattoon he sent the following letter to Mrs. O'Dea: "Answering yours of the 23rd relative to the Flager Street lots. Since wiring you I have reconsidered the matter, and have made up my mind to accept $1,000.00 per front foot, as much down as you can get, one-half preferred, as I understand they are asking one-half down at the present time." Mrs. O'Dea, on behalf of Throm, had entered into a contract with one Peters in and by which contract Peters was to pay $102,000 to Throm for the lots. In October Throm and his son, Gardner, went to Miami and called upon Mrs. O'Dea and the latter told Throm that she had procured for him $102,000 for his lots at $1,000 per front foot, and the latter said that was fine. The parties all met on December 11, 1925, to close the deal in Mr. Peters' office, at which time Throm said that he had found 9½ inches more of ground than he thought there was and he wanted $950 more and that he would not sell unless he got $950 more. Throm requested that $950 be taken out of Mrs. O'Dea's commission, which proposition she refused to accept. Throm refused at that time to close the deal, but sometime later he conveyed the lots to the Halcyon Hotel

Corporation, of which Peters was president and principal stockholder, for the contract price of $102,000, and the deal was closed.

Mrs. O'Dea brought this suit to recover her commission from Throm, who seeks to avoid payment of the same for two reasons: First, he insists that the contract, if any was made between Mrs. O'Dea and himself, was made in the State of Florida where it will be presumed the common law prevails, and Mrs. O'Dea, being a *feme covert,* was not capable of making a contract under the common law and the same was absolutely void. Second, that no contract between the parties was consummated because he only authorized her to sell the property for $1,000 a foot and that there were, in fact, 9½ inches in excess of 102 feet, whereby the contract price should have been $102,960.

It has been uniformly held in this State that in the absence of proof to the contrary the common law will be presumed to prevail in other States on all common-law questions. *Forsyth v. Barnes,* 228 Ill. 326; *Scholten v. Barber,* 217 Ill. 148; *Hogue v. Steele,* 207 Ill. 340; *Schlee v. Guckenheimer,* 179 Ill. 593. It has also been universally held that contracts of married women, under the common law, were not merely voidable but were absolutely void. *Rogers v. Higgins,* 48 Ill. 211; *Hogan v. Hogan,* 89 Ill. 427; *Forsyth v. Barnes, supra; Burr v. Beckler,* 264 Ill. 230. It is also true that the validity of a married woman's contract is governed by the law of the place where the contract was made, her contractual capacity being considered legal rather than domiciliary. *Burr v. Beckler, supra.* It is important, therefore, to first determine whether this brokerage contract, if any such contract was entered into, was made in the State of Illinois or the State of Florida. The matter was first broached between the parties in the city of Mattoon, in this State. It is insisted by counsel for Mrs. O'Dea that a fair interpretation of the conversation between the parties in July,

1925, in the city of Mattoon, as hereinbefore set forth, shows a request on the part of Throm to procure a purchaser of said lots for the sum of $102,000. ''No particular form is necessary for such an employment, and ordinarily all that is necessary is to show that the broker acted with the consent of the principal, whether such consent was given by a written instrument, orally, or by implication from the conduct of the parties, provided, of course, there is a sufficient consideration for the employment.'' 9 C. J. 516. Taking into consideration the business relations existing between the parties at that time, including the fact that Mrs. O'Dea was then acting as his agent in many matters involving real estate transactions in Florida, the subsequent acts of Throm, and the correspondence between the parties in regard thereto, it is conclusively shown that Throm, himself, so construed the conversation as a request for her to sell the Flagler Street lots on the conditions mentioned, and, in our opinion, the contract of brokerage was complete. The fact that a party, residing in Illinois, requests a real estate broker, also residing in Illinois, and the request being made in Illinois, to procure a purchaser of real estate located in a foreign State, does not stamp such a contract as one having been made where the property to be sold is situated. A broker, under such an agreement, is at liberty to sell the property to any person whether he lives in Illinois or elsewhere, and the fact that the broker may sell the property to some person living in some other State cannot shift the contract of brokerage to the State where the purchaser may reside. Even if it be conceded that the conversation referred to in the city of Mattoon between the parties was not a sufficient authorization for Mrs. O'Dea to sell these lots, the letter of Throm of July 28, 1925, certainly supplies any deficiency in that respect. This letter itself creates a contract in Illinois. In the case of *Burr v. Beckler,*

*supra,* cited by counsel for plaintiff in error, the facts, in substance, were as follows: Ednah J. Tobey, a resident of Chicago, while temporarily in Miami, Florida, executed a note and secured the same by a mortgage on real estate in Cook county, Illinois, and sent the note and mortgage, by United States mail, to Chicago. A bill was afterward filed to foreclose the mortgage, and one of the defenses set up by her was that the note and trust deed were void for the reason that they were executed in the State of Florida, while she was a *feme covert* and incapable by the laws of Florida of executing the same. In passing upon this question the court said: ''A note takes effect from the time of its delivery and not from its date. Until the maker of a note parts with the possession and control of the instrument he may cancel it or dispose of it as he pleases, and a note is not executed until delivered. The note in this case was made in Florida, and the trust deed was signed at the same time and acknowledged before a notary public of the county of Dade, in that State. Charles H. Tobey had designated the United States mail as the means of transmission of the note and trust deed to him, and Ednah J. Tobey, in compliance with his request, deposited them in the mail in the State of Florida. When the note and trust deed were so deposited, Ednah J. Tobey, the maker, parted with the possession of and lost all control over the papers and all right to re-take or reclaim them. Under such circumstances the delivery was complete in Florida when the note and trust deed were placed in the mail, directed to Charles H. Tobey, trustee of the Ludington estate. (*Barrett v. Dodge,* 16 R. I. 740; *Mitchell v. Byrne,* 6 Rich. L. 171; *Kirkman v. Bank of America,* 2 Coldw. 397; *Canterbury v. Sparta Bank,* 91 Wis. 53; *Garrigue v. Kellar,* 164 Ind. 676; 3 Ruling Case Law, 860.)'' Throm chose to deliver this letter to Mrs. O'Dea by means of the United States mail. He de-

posited the letter in the mail in the city of Mattoon, Illinois, therefore he made and executed the contract of brokerage in Illinois. In contracts of brokerage the contract is complete when the request is made for the services of the broker to be performed under the conditions and terms thereof and remains in force unless withdrawn before the performance of the services. While the facts in the case of *Burr v. Beckler, supra,* are different from the facts presented in this case, yet by analogy we conceive the principle to be the same.

The second contention of plaintiff in error that the minds of the parties never met cannot be sustained. The basis for this as urged by counsel is that Mrs. O'Dea never succeeded in procuring a contract for the full frontage of the lots, 102 feet 9½ inches. It appears in evidence that Throm purchased these lots on the basis of a frontage of 102 feet. Mrs. O'Dea testified that in their conversation he only mentioned 102 feet. She notified him by letter and telegram that she had sold the property on the basis of a frontage of 102 feet. He never, at any time, mentioned to Mrs. O'Dea the extra 9½ inches until all the parties met to sign the contract. He went to Florida knowing that the contract provided for a purchase price of $102,000. After he arrived at Miami and met Mrs. O'Dea and was informed fully by her in regard to the contract and the purchase price thereof, he stated, according to the testimony of Mrs. O'Dea, "It was fine." At no time up to the time the parties met to close the deal did he mention to Mrs. O'Dea, or anyone else, that the contract did not provide for the extra 9½ inches. He testified on the trial that he knew of the extra 9½ inches all the time. If this is true then he plainly misled Mrs. O'Dea and practiced a deceit upon her. As we understand the evidence, he subsequently conveyed the property for $102,000 on substantially the terms contained in the contract. The jurors saw the parties and heard their testimony and by their verdict gave

credit to the testimony of Mrs. O'Dea, and the verdict was approved by the trial court. There can be no bona fide claim that it was not through her efforts solely that Throm sold these lots at the immense profit of over $83,000, or nearly 300 per cent, after owning them but a few months. If the testimony of Mrs. O'Dea is true, and the facts and circumstances shown by the evidence corroborate her, she is entitled to her commission, to which no question is raised as to its reasonableness and she cannot be deprived thereof by the deceit of withholding from her knowledge of the additional frontage of 9½ inches.

No other questions are raised of any materiality, and the judgment of the circuit court is affirmed.

*Affirmed.*